LEVI E. ELLIS AND ANOTHER v. J. W. LINDMARK AND ANOTHER.[1]

May 10, 1929.

No. 26,873.

[1]Reported in 225 N. W. 395.

*Jamison, Stinchfield & Mackall,* for appellant drug company.
*C. J. Dodge* and *McClearn & Gilbertson,* for appellant Lindmark.
*Jenswold, Jenswold & Dahle,* for respondents.

DIBELL, J.

Action to recover damages for the negligence of the defendants. There was a verdict for the plaintiffs. The defendant Lindmark appeals from the order denying his motion for a new trial. The defendant drug company appeals from the order denying its alternative motion for judgment notwithstanding the verdict or a new trial.

The defendant Lindmark is a retail druggist in Moose Lake, Carlton county. The defendant Minneapolis Drug Company is a wholesale druggist in Minneapolis. On February 5, 1927, Lindmark ordered through the traveling salesman of the drug company a barrel of cod liver oil. He told him that he wanted a good grade of cod liver oil for poultry. The plaintiffs and other poultry raisers had requested him to order in bulk. Before that he had ordered in bottles or containers. A barrel of raw linseed oil was sent him. It was invoiced as cod liver oil. On the freight bill it was designated cod liver oil. It was taken by the drayman employed by Lindmark and unloaded in the basement of his store, bung end up. The other end was labeled linseed oil. He siphoned oil from it for the plaintiffs, and they used it in a mash for their poultry. They questioned whether it was cod liver oil, asked him about it, and were assured that it was.

The questions are:

(1)   Whether the drug company was negligent.

(2)   Whether Lindmark was negligent.

(3)   Whether if both Lindmark and the drug company were negligent the negligence of Lindmark was an intervening and the sole proximate cause relieving the drug company or whether both were liable.

(4)   Whether the plaintiffs were guilty of contributory negligence preventing recovery.

(5)   Whether the plaintiffs, since they had no contract relations with the drug company, and considering the nature of the substance sold, could recover.

(6)   Whether evidence of others who had used the same oil with like consequences was competent.

(7) - Whether the damages were conjectural and speculative or so remote as to prevent recovery.

(8) Whether the damages awarded are excessive.

■ We have no difficulty in sustaining the finding of the jury that the drug company was negligent in sending raw linseed oil instead of the cod liver oil ordered. Someone connected with it and for whose act it was responsible was careless and blundered. The mere statement of the facts is sufficient to justify a finding of negligence.

■ The evidence sustains a finding that Lindmark was negligent. He was a pharmacist of many years' experience. He siphoned the oil from the barrel. He had the opportunity of knowing from the sense of taste and smell and sight the character of the substance. He had dealt in cod liver oil and linseed oil before. When his attention was called to the character of the oil by the plaintiffs, he assured them that it was good cod liver oil. There is no reason for questioning the jury's finding of the negligence of Lindmark.

■ The negligence of Lindmark was not as a matter of law an intervening and the sole proximate cause. The drug company knew that Lindmark wanted cod liver oil and knew through its representative that he wanted it for poultry raisers and of course knew that it was to be sold as cod liver oil to consumers. We see nothing requiring a holding that Lindmark's negligence interrupted the negligence of the drug company and was the sole proximate cause of the result which followed. The jury was justified in finding that both were negligent, that the negligence of each contributed, and that their negligence was concurrent. Moehlenbrock v. Parke, Davis & Co. 141 Minn. 154, 169 N. W. 541; Meshbesher v. Channellene O. & M. Co. 107 Minn. 104, 119 N. W. 428, 131 A. S. R. 441; Farrell v. G. O. Miller Co. 147 Minn. 52, 179 N. W. 566; Kentucky Ind. Oil Co. v. Schnitzler, 208 Ky. 507, 271 S. W. 570, 39 A. L. R. 979; Liberty Mut. Ins. Co. v. G. N. Ry. Co. 174 Minn. 466, 219 N. W. 755, and cases cited; 2 Dunnell, Minn. Dig. (2 ed.) § 2528; 4 Id. § 6999. Goar v. Village of Stephen, 157 Minn. 228, 196 N. W. 171, is not opposed.

■ The plaintiffs cannot be charged as a matter of law with contributory negligence in using the linseed oil. There was no negligence in their taking it from the store. They took it in a container which had been used before for cod liver oil. They became suspicious. They went to Lindmark and queried him about it and were assured that the oil was genuine cod liver oil of excellent quality. He was supposedly skilled as a pharmacist. They were not much experienced. They had dealt with him before. Naturally enough they would rely upon him. It was for the jury to say whether they were contributorily negligent. Fisher v. Golladay, 38 Mo. App. 531; Wright v. Howe, 46 Utah, 588, 150 P. 956, L. R. A. 1916B, 1104; Moran v. Dake Drug Co. (Sup.) 134 N. Y. S. 995, affirmed in 155 App. Div. 879, 139 N. Y. S. 1134. That they did not desist from its use upon first suspicion does not as a matter of law show them to be negligent. Bark v. Dixson, 115 Minn. 172, 131 N. W. 1078, Ann. Cas. 1912D, 775.

■ The drug company claims that the plaintiffs have no cause of action against it. It invokes the principle that the seller of a defective article or substance not in itself dangerous to a retailer who in turn sells it to the ultimate consumer who suffers damage from its use is not liable at the suit of the consumer unless in a class of exceptional cases to which this does not belong. The claim is urgently pressed and is not without force.

There was no contractual relation between the plaintiffs and the drug company. The plaintiffs' contract was with Lindmark. Neither the raw linseed oil nor the cod liver oil was a dangerous substance. Nor were they substitutes. They could not be used interchangeably.

The cases are involved and not subject to a satisfactory classification. Sometimes liability is asserted on the ground of implied warranty; sometimes on the ground of false representation; sometimes the seller has violated a statute and thereby becomes liable as if for negligence; sometimes the action is based as here on actual negligence; sometimes the article sold is a deadly or injurious poison; sometimes it is unwholesome food or an impure beverage

intended for human consumption; sometimes the artitcle is intrinsically dangerous; sometimes it is defective machinery, or an automobile with defective parts, the use of which results in harm to a third person; and sometimes recovery is denied in case of property damage though permitted in the case of injury to the person.

We make no attempt to review the cases. Concededly they are in confusion. The case before us does not seem particularly difficult. The claim is not that the drug company delivered an inherently dangerous substance but that it delivered a substance not ordered and that damage resulted when such substance was used for the purpose for which that ordered was to be used. When the original seller negligently makes a mistake and his vendee is also negligent and harm results to one innocently purchasing, the law should put liability upon both parties. This is such a case. And though there are an abundance of cases to the contrary, the larger number perhaps in accord with them, there are plenty holding in principle the rule which we adopt. Moehlenbrock v. Parke, Davis & Co. 141 Minn. 154, 169 N. W. 541 (negligence in selling impure ether and negligence of physicians in administering it); Farrell v. G. O. Miller Co. 147 Minn. 52, 179 N. W. 566 (gasolene placed in wrong can by seller and used by employes of purchaser; statute involved); Meshbesher v. Channellene O. & M. Co. 107 Minn. 104, 119 N. W. 428, 131 A. S. R. 441 (sale of impure sweet oil, to be used as a food and in cooking, to retailer, who sold to consumer); Kentucky Ind. Oil Co. v. Schnitzler, 208 Ky. 507, 271 S. W. 570, 39 A. L. R. 979 (gasolene put into cans containing kerosene and sold to retailer who sold to consumer); Murphy v. Sioux Falls Serum Co. 44 S. D. 421, 184 N. W. 252 (sale of impure and poisonous hog serum); Mazetti v. Armour & Co. 75 Wash. 622, 135 P. 633, 48 L.R.A.(N.S.) 213, Ann. Cas. 1915C, 140 (sale of spoiled canned meat to grocer who sold to restaurant); Davis v. Van Camp Packing Co. 189 Iowa, 775, 176 N. W. 382, 17 A. L. R. 649 (sale of impure prepared food to retailer who sold to consumer); Pillars v. R. J. Reynolds Tobacco Co. 117 Miss. 490, 78 So. 365 (tobacco containing foreign substance sold to distributor who sold to user); Coca-Cola Bottling Co. v.

Barksdale, 17 Ala. App. 606, 88 So. 36 (coca cola containing deleterious foreign matter).

That the negligence resulted in injury to property and not to the person should not prevent recovery. Murphy v. Sioux Falls Serum Co. 44 S. D. 421, 184 N. W. 252; Mazetti v. Armour & Co. 75 Wash. 622, 135 P. 633, 48 L.R.A. (N.S.) 213, Ann. Cas. 1915C, 140.

Cases are collected and reviewed in 24 R. C. L. 512-518, §§ 804-810, and in notes in 17 A. L. R. 672; 39 A. L. R. 992; 42 A. L. R. 1243. Minnesota cases are cited in 4 Dunnell, Minn. Dig. (2 ed.) § 6995, et seq.

■ Evidence that other poultry raisers suffered in their property when the same oil was used is competent. The claim of the drug company that such evidence is incompetent finds support under the facts present in Crouch v. National Livestock Remedy Co. 205 Iowa, 51, 217 N. W. 557, where the court found that the conditions under which it was used by different persons were not so alike that the evidence was competent. The rule we state is recognized in Kennedy v. Plank, 120 Wis. 197, 97 N. W. 895; Dail v. Taylor, 151 N. C. 284, 66 S. E. 135, 28 L.R.A. (N.S.) 949; and Davis v. Van Camp Packing Co. 189 Iowa, 775, 176 N. W. 382, 17 A. L. R. 649.

■ The defendants claim that the damages awarded are speculative and conjectural and remote.

The plaintiffs claimed a decreased production of eggs, impaired hatchability, loss of poultry, and to some extent loss of profits. They were extensive raisers of high-grade poultry. They had a flock of more than 1,000 breeders and 65 cockerels. They had spent several years in developing and improving their flock. They sold baby chicks. They did a large business and sold at good prices. Their business had been established for several years. One cannot escape the conclusion, in going over the evidence, that they sustained severe loss in their flock, and in the production and in the hatchability of the eggs. There was enough to justify a recovery of some amount for loss of profits, though this item is the most uncertain of all. Under our decisions it cannot be said that the damages were so conjectural or speculative or remote that no recovery

can be had. Emerson v. Pacific C. & N. Packing Co. 96 Minn. 1, 104 N. W. 573, 1 L.R.A. (N.S.) 445, 113 A. S. R. 603, 6 Ann. Cas. 973, and cases cited; Miller v. Reiter, 155 Minn. 110, 192 N. W. 740, and cases cited. The tendency of the court has been to ascertain damages, when an actual wrong has been done, though doing so involves labor, rather than to deny relief with the easy statement that the damages sought are too speculative and conjectural or too remote to permit a recovery. There should be caution, especially in the matter of lost profits, and the court should supervise the result of the jury's work. Olson v. Naymark, 177 Minn. 383, 225 N. W. 275.

■ Nor are the damages excessive. The recovery sought, $3,300, was exaggerated and fanciful, but the recovery of $1,412.30 was within permissible limits.

The drug company makes 70 assignments of error and its codefendant nine. No criticism is intended. The case was a long one and the assignments are directed to questions proper to present. Many are grouped. We have examined them all. Most of them are directed to the points which we have discussed. The others are not of such importance as to justify extending the opinion by a detailed mention.

Orders affirmed.