## Mattiucci v. C. F. Simonin's Sons, Inc.

*Frank Carano*, for plaintiff.

*George V. Strong*, for defendant.

BONNELLY, J., January 30, 1941.—Plaintiff filed a statement of claim in trespass seeking damages for a quantity of mayonnaise destroyed as the result of the alleged negligence of defendant. Plaintiff is a manufacturer of mayonnaise. He purchased a particular type of oil called "Damea" oil from a middleman who distributed that product. Defendant is the manufacturer of the oil, which was packed and sold in one-gallon sealed containers. Plaintiff mixed this oil with other ingredients of the mayonnaise and subsequently found that certain foreign substances, particles of glass and seam dope, had been present in the Damea oil, thereby ruining the finished product and making it unfit for sale.

The negligence of defendant is alleged to consist in a lack of proper preparation, packing, and inspection of the Damea oil, so that particles of glass and seam dope were present in the product when it was used by plaintiff. To the statement of claim defendant filed an affidavit of defense raising questions of law.

The issue of law which must be decided in this case is whether the manufacturer of a product (sold in sealed containers), which is itself an ingredient of a food product, is subject to liability for harm caused to prop-

erty of the one who produces the finished product where no privity of contract exists between the manufacturers.

The entire question of the extent of the liability of a manufacturer for harm caused by his negligence in turning out a product has been the subject of considerable controversy throughout the history of the law of torts. Early cases restricted the liability of a manufacturer of a product whose use resulted in injuries to the user to those who stood in privity of contract with the manufacturer. A leading case in this regard is the famous English decision of Winterbottom v. Wright, 10 Mees. & Welsb. 109; see also Thomas v. Winchester, 6 N. Y. 397, 408, and numerous cases cited in Huset v. J. I. Case Threshing Machine Co., 120 Fed. 865, 868 (C. C. A. 8, 1903). This doctrine was subsequently whittled down by the crystallization of three exceptions to the rule of nonliability.

The first exception was made in the case of products "inherently dangerous to life and health of mankind." Thus, "an act of negligence of a manufacturer or vendor which is imminently dangerous to the life or health of mankind, and which is committed in the preparation or sale of an article intended to preserve, destroy or affect human life is actionable by third parties who suffer from the negligence": Huset v. J. I. Case Threshing Machine Co., 120 Fed. 865, 870 (C. C. A. 8, 1903).

The second exception was made where the article supplied was to be used for the purpose of the chattel owner's business upon the chattel owner's premises.

The third exception was made where the manufacturer or vendor knew at the time the product was sold that it was defective in some particular which the vendee was unlikely to discover.

Since there is no allegation in the present statement of claim that defendant knew of the existence of the deleterious substances in the Damea oil, this third exception is inapplicable. Obviously, the second exception is not pertinent. The issue really comes to a consideration of

the status of the first exception in the present law of torts.

In the Huset case, supra, was made the strongest exposition of the view in favor of restricting the liability of a manufacturer for carelessness in manufacturing the product to the immediate vendee, except where the facts fit within the three exceptions named. Judge Sanborn's opinion has been the champion of those who prefer to limit such liability at the present time.

To be contrasted with the narrow rule laid down by Judge Sanborn is the case of MacPherson v. Buick Motor Co., 217 N. Y. 382, 111 N. E. 1050. There, Judge Cardozo, of the New York Court of Appeals, demonstrated the arbitrary and illogical nature of the restrictive rule of nonliability applied by Judge Sanborn. Under the MacPherson case, in order for a plaintiff who is not in privity of contract with defendant to obtain a recovery, it is not necessary for the chattel to be one the use of which is intended to "destroy, preserve or affect human life." The important question becomes this: Is the chattel one, which, unless carefully made, carries with it an unreasonable risk of harm to those who lawfully use it for the purpose for which it is manufactured? If so, then quite apart from any privity of contract between plaintiff and defendant there may be a recovery in an action of trespass.

In the A. L. I. Restatement of Torts, sec. 395, the principle of MacPherson v. Buick Motor Co., supra, has been adopted. Moreover, our Supreme Court in Ebbert et al. v. Philadelphia Elec. Co., 330 Pa. 257, 269, has indicated its approval of the MacPherson case.

Section 395 of the A. L. I. Restatement provides:

"A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the

vicinity of its probable use, is subject to liability for bodily harm caused to them by its lawful use in a manner and for a purpose for which it is manufactured."

If, therefore, this were an action to recover for bodily harm, there would appear to be no cause for restricting the liability merely because plaintiff is not in privity of contract with defendant. However, counsel for defendant contends that since this action is for property damages (as distinguished from bodily harm) there can be no recovery in the absence of privity of contract even if section 395 of the Restatement expresses the law applicable in this Commonwealth.

It is true that section 395 as worded expressly refers to a case involving bodily harm. However, sections 497 and 499 indicate that the rules determining negligence of conduct threatening harm to the physical condition of land and chattels are the same as those which determine the negligence of conduct which threatens bodily harm. While there is no *qualitative* difference between the case of conduct threatening harm to the body and that of conduct threatening harm to the property of plaintiff, there may be a *quantitative* difference (see comment to section 497). Essentially, the difference is one of degree. Thus, a greater leeway in favor of defendant may possibly exist where his conduct merely threatened harm to a chattel. However, with this question we are not now concerned, since that is fundamentally an issue for the jury in determining whether defendant was negligent under the facts existing in the present case. It does not go to the question of the *existence of a duty* owed by defendant to plaintiff as purchaser and user of the product manufactured by defendant.

In a number of cases it has been argued that the tort liability of a manufacturer is to be strictly confined to a case where there has been an invasion of the interest of bodily security. To our knowledge, the issue is de novo in this Commonwealth. In other jurisdictions there appears to be a divergence of opinion on this point. A lead-

ing example of those which deny liability of a manufacturer for harm caused to chattels is Windram Mfg. Co. v. Boston Blacking Co., 239 Mass. 123, 131 N. E. 454. However, in a number of other States there is accepted the view that very substantially the same rules apply to a manufacturer of products which result in harm to chattels as those which govern the liability of a manufacturer of products whose use results in bodily harm. These include Kolberg v. Sherwin-Williams Co., 93 Cal. App. 609, 269 Pac. 975; Ellis v. Lindmark et al., 177 Minn. 390, 225 N. W. 395; Murphy v. Sioux Falls Serum Co., 44 S. D. 421, 184 N. W. 252; and E. I. du Pont de Nemours & Co. v. Baridon, 73 F. (2d) 26 (C. C. A. 8, 1934), where the court in a well-reasoned opinion rejected the proffered distinction between property damages and bodily harm.

We see no reason for permitting liability where defendant manufacturer's negligence results in bodily injury and to deny liability where the negligence results in property damage only. We prefer to follow the view expressed in the du Pont case, supra. And, as we have pointed out, the whole question of privity of contract between plaintiff and defendant is immaterial.

This case resolves itself, then, into one which is essentially like that involving the liability of a negligent manufacturer of a product to a vendee who purchases it from a third party.

Where the product is sold in a sealed container the vendor is regarded as a "mere conduit" from the manufacturer to the purchaser. Under the "original package doctrine" the primary duty of preparation and inspection rests upon the manufacturer: Ebbert et al. v. Philadelphia Elec. Co., supra.

Therefore, we conclude that defendant owed a duty to plaintiff to use reasonable care in the preparation and inspection of the Damea oil which was used by plaintiff in the manufacture of mayonnaise. Whether or not de-

fendant has violated this duty is a question to be decided by the jury.

The questions of law raised by the affidavit of defense are dismissed and defendant is given leave to file an affidavit of defense to the merits.