## MILBANK MUTUAL INSURANCE COMPANY AND ANOTHER v. CHARLES PROKSCH.

244 N. W. 2d 105.

June 11, 1976—No. 45278.

*Cousineau, McGuire, Shaughnessy & Anderson* and *Robert J. McGuire*, for appellant.

*Robins, Davis & Lyons, James D. Steiner*, and *Robert M. Wattson*, for respondents.

KELLY, JUSTICE.

Defendant appeals from an order of the district court denying his motion for judgment notwithstanding the verdict or for a new trial following a special verdict awarding plaintiffs damages for injury to property. We affirm.

In December 1968, Harold B. Baltzer owned a dwelling at 4222 East 59th Street in Minneapolis which was insured by plaintiff Milbank Mutual Insurance Company, appearing here in the role of subrogee, and leased to plaintiff Anver M. Larson. On December 14, Larson's daughter, Judelle Larson, and a friend, Diane Hall, purchased a Christmas tree at defendant's tree lot from an employee of defendant. Both women testified that the employee represented that the Christmas tree they purchased was fire-retardant. Ms. Larson testified:

"Q. Now when you got to the lot what did this young man tell you about the Christmas trees that he had for sale?

\* \* \* \* \*

"The Witness: He asked—he told me that—I told him I was looking for a Scotch Pine tree, and then he was telling me how the ones with the blue tags they cost one or two dollars more and that they were fireproof and they had been treated for the needles not to fall off so much \* \* \*."

Ms. Hall testified:

"Q. Now were you present when he described the various trees on his lot to Judelle and yourself?

"A. Yes.

"Q. And what did he tell you about the Christmas trees?

"A. We asked him of the difference between the tagged and the untagged trees that were on the lot and he informed us that they were a higher priced tree because they had been treated with an element that would make them fire retardant, fireproof. I am not sure of the words, but more likelihood not to catch fire."

Defendant staunchly denied that he or his employees had made any such representation. Another witness, however, who had purchased a tree at defendant's lot a few days before the two women did, testified that the salesperson had told her that the tagged trees were "fireproof trees" and that they had been "treated for fireproofing."

Ms. Larson testified that she would not have paid two dollars more for the tree if it had not been treated for fireproofing. She took the tree home and told her father that she had purchased a fireproof tree. While the Larsons normally took their tree down immediately after Christmas, after discussing the matter Judelle and Anver Larson decided to keep the tree up longer because of its fireproofing treatment.

On New Year's Eve, Ronald Larson, Anver Larson's son, had a party in the Larson home for some school friends. While the party was in progress, two of the young people were throwing a pillow back and forth when it struck a lower branch of the tree.

A small flame immediately appeared in the lower branches and the tree went up in flames in a matter of seconds.

The jury found by special verdict that (1) defendant's employee stated to Ms. Larson that the tree had been treated with an element which created more likelihood that the tree would not catch fire; (2) the employee's statement became a part of the basis of the bargain for the tree. The trial court ordered judgment on the verdict for plaintiff Milbank Mutual Insurance Company in the amount of $9,098.02 and for plaintiff Anver M. Larson in the amount of $5,818, which amounts represented the parties' agreement as to the property damage resulting from the fire.

Defendant raises two issues on this appeal: (1) May a buyer recover for breach of an express warranty when that buyer's testimony as to the content of the seller's representation differs from the jury's finding on that issue? (2) May plaintiffs recover property damage for breach of express warranty notwithstanding the provisions of Minn. St. 1967, § 336.2—318?

■ Defendant's position on the first issue is plainly without merit. It is axiomatic that a reviewing court must view the evidence in the light most favorable to the jury's verdict. There is credible evidence on the record, in the form of the testimony of Diane Hall, which fully supports the jury's finding as to the content of the representation. There is further credible evidence that the Larsons relied on the representation as made. As the trial court stated in responding to defendant's argument:

"* * * Defendant's claims in this regard are entirely unsound because the warranty may be established through the testimony of any witness and it makes no difference that the testimony of the witnesses may vary as to the language used. It is not at all unusual for two witnesses to give varying versions of the language used in a conversation and it makes no difference that the language used is found by the jury to be different from that testified to by the party principally in interest."

The jury, properly instructed, found representation and reliance.

An experienced and able trial judge has upheld those findings. They will not be overturned on appeal.

■ As to the second issue, defendant argues that recovery for property damage to a member of the family of the buyer is barred by Minn. St. 1967, § 336.2—318, the law in effect at the time of the fire. We disagree. That statute was not intended to restrict the development of Minnesota common law relating to third-party beneficiaries of warranties. The statute provided:

*"A seller's warranty whether express or implied extends to any natural person* who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section." (Italics supplied.)

On its face, the above section *extends* the seller's warranty to an additional class of persons; it does not restrict the warranty to that class or impair the ability of the courts to extend the warranty to other classes in appropriate cases. This interpretation is directly supported by the official Uniform Commercial Code and Minnesota Code Comments to the section. The official comment provides in part:

*"2. The purpose of this section is to give the buyer's family, household and guests the benefit of the same warranty which the buyer received in the contract of sale, thereby freeing any such beneficiaries from any technical rules as to 'privity.'* It seeks to accomplish this purpose without any derogation of any right or remedy resting on negligence. It rests primarily upon the merchant-seller's warranty under this Article that the goods sold are merchantable and fit for the ordinary purposes for which such goods are used rather than the warranty of fitness for a particular purpose. Implicit in the section is that any beneficiary of a warranty may bring a direct action for breach of warranty against the seller whose warranty extends to him.

"3. This section *expressly includes as beneficiaries* within its provisions the family, household, and guests of the purchaser. *Beyond this, the section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain.*" (Italics supplied.)[1] 21A M.S.A. § 336.2—318, U.C.C. Comment.

The Minnesota comment provides:

"This section extends the seller's express and implied warranties to members of the buyer's family and household and to guests in his home. According to U.C.C. § 2—318, Comment 3, it does not limit the developing law to this extension, and the Minnesota courts are free to go beyond this section. At present, the law of privity in Minnesota is in a state of flux and already seems to go beyond the extension proposed in this section. Beck v. Spindler, 256 Minn. 543, 99 N. W. 2d 670 (1959); see Gardner v. Coca-Cola Bottling Co., 267 Minn. 505, 127 N. W. 2d 557 (1964)." 21A M.S.A. § 336.2—318, Minnesota Code Comment.

These comments make it clear that the section is a liberal one, intended to expressly enlarge the class of third-party beneficiaries. Beyond this express enlargement, however, the section intimates nothing further and courts are free to continue the development of the common law of warranty.

This court recognized its ability to further that development in Froysland v. Leef Bros. Inc. 293 Minn. 201, 197 N. W. 2d 656 (1972). Froysland involved, in part, an action for breach of an express warranty made by a supplier to an employer with regard to the flame-resistant quality of clothing purchased by the em-

---

[1] For a discussion of the importance of the comments, see Skilton, *Some Comments on the Comments to the Uniform Commercial Code,* 1966 Wis. L. Rev. 597, 619. Regarding Comment 3 to U.C.C. § 2—318, Professor Skilton states: "While comment 3 to section 2-318 is thus ambiguous in some respects, on the main point it is clear: section 2-318 should not be read with a negative inference. Any such reading would be restrictive, regressive, and contrary to the direction of modern law."

ployer for his employees. Plaintiff, one of those employees, had been severely injured when the clothing caught fire and brought an action against the supplier. Although an employee is not within the class of beneficiaries in Minn. St. 1967, § 336.2—318, we nonetheless allowed recovery:

"* * * Defendant argues that the plaintiff cannot rely on contractual warranties made by defendant to plaintiff's employer relating to the flame-resistant qualities of garments supplied by defendant. Plaintiff acknowledges that he had no knowledge of the warranties expressed in the contracts, but seeks to rely thereon as the intended beneficiary. In recent decisions this court has allowed recovery despite lack of privity between plaintiff and defendant in certain situations but has not done so upon facts such as those presented herein. See, McCormack v. Hankscraft Co. Inc. 278 Minn. 322, 154 N. W. 2d 488 (1967); Farr v. Armstrong Rubber Co. *supra*; Beck v. Spindler, 256 Minn. 543, 99 N. W. 2d 670 (1959).

"It is clear that even though plaintiff here was without knowledge of the warranties, he was the ultimate consumer of the treated garments and the intended beneficiary of the safety provisions provided by the express warranties in the agreement between his employer and defendant. To allow the employee to recover in such a situation is consistent with our prior decisions. We, therefore, hold that an employee may recover for breach of warranty by a supplier to an employer for a product used, as in this case, for the employee's safety. See, Delta Oxygen Co. v. Scott, 238 Ark. 534, 383 S. W. 2d 885 (1964); Ewing v. Lockheed Aircraft Corp. 202 F. Supp. 216 (D. C. Minn. 1962); Hart v. Goodyear Tire & Rubber Co. 214 F. Supp. 817 (N. D. Ind. 1963); Peterson v. Lamb Rubber Co. 54 Cal. 2d 339, 5 Cal. Rptr. 863, 353 P. 2d 575 (1960)." 293 Minn. 207, 197 N. W. 2d 660.

Thus, in Froysland, we relied on our prior decisions in expanding the common law to permit recovery to a third-party beneficiary not within Minn. St. 1967, § 336.2—318.

Although some courts have indicated disagreement regarding

the scope of this section,[2] the bulk of the cases and comments squarely support a court's authority to expand the class of third-party beneficiaries beyond the face of the section. 1 Anderson, Uniform Commercial Code (2 ed.) § 2-318:6; 3 Bender's U.C.C. Service, Duesenberg & King, Sales and Bulk Transfers, § 7.05 [4], 7-66, 7-70; Hawkland, *Limitation of Warranty Under the Uniform Commercial Code*, 11 How. L. J. 28, 45; Lauer, *Sales Warranties Under the Uniform Commercial Code*, 30 Mo. L. Rev. 259, 277; Skilton, *Some Comments on the Comments to the Uniform Commercial Code*, 1966 Wis. L. Rev. 597, 617; Berry v. G. D. Searle & Co. 56 Ill. 2d 548, 309 N. E. 2d 550, 556 (1974); Salvador v. Atlantic Steel Boiler Co. 457 Pa. 24, 319 A. 2d 903 (1974); Kassab v. Central Soya, 432 Pa. 217, 246 A. 2d 848 (1968); Speed Fastners, Inc. v. Newsom, 382 F. 2d 395, 398 (10 Cir. 1967); Picker X-Ray Corp. v. General Motors Corp. 185 A. 2d 919, 923 (D. C. App. 1962); Thompson v. Reedman, 199 F. Supp. 120, 121 (E. D. Pa. 1961).[3] Another court allowed recovery in a third-party beneficiary situation where leakage of an aerosol can caused property damage, but no personal injury. Rhodes Pharmacal Co. v. Continental Can Co. 72 Ill. App. 2d 362, 219 N. E. 2d 726 (1966).

█ If the statute permits further expansion of beneficiaries, the question remains whether such an expansion is appropriate to cover the instant case, in which a member of the buyer's family suffered serious property damage but no personal injury. Under the logic and policy underlying our prior cases, the answer is clearly yes. Prior to 1940, this court had not squarely faced the issue of whether lack of privity should be a defense to breach-

[2] See, Note, 31 Brooklyn L. Rev. 367.

[3] Cases declining to extend recovery usually do so on the ground that the common law in those jurisdictions traditionally denies recovery in the absence of privity. See, e. g., Henry v. John W. Eshelman & Sons, 99 R. I. 518, 209 A. 2d 46 (1965); compare Kelly v. Ford Motor Co. 110 R. I. 83, 87, 290 A. 2d 607, 610 (1972) (dicta). See, also, Kenney v. Sears, Roebuck & Co. 355 Mass. 604, 246 N. E. 2d 649 (1969); Eli Lilly & Co. v. Casey, 472 S. W. 2d 598 (Tex. Civ. App. 1971).

of-warranty actions because our cases were most often decided on the alternative theory of negligence. See, Note, 25 Minn. L. Rev. 83, 96. In the context of that theory, we have been liberal in allowing recovery in the absence of privity. For example, in Ellis v. Lindmark, 177 Minn. 390, 225 N. W. 395 (1929), we held that a poultry farmer could recover directly from a drug company for property damage to his flock caused by delivery of linseed oil instead of cod liver oil. We noted that the distinction between property damage and personal injury would not bar recovery. 177 Minn. 396, 225 N. W. 397.

In Beck v. Spindler, 256 Minn. 543, 557, 99 N. W. 2d 670, 679 (1959), we discussed our prior negligence cases and other developments in the law of privity and determined that a purchaser could recover from a manufacturer regardless of privity for breach of an implied warranty of fitness. Then, in McCormack v. Hankscraft Co. Inc. 278 Minn. 322, 154 N. W. 2d 488 (1967), we upheld recovery for breach of an express warranty in the absence of privity in a personal injury case. We commented in that case as follows:

"Without attempting to discuss the many cases adopting the rule of strict liability and the many articles testifying to the remarkable shift toward its adoption, we hold that neither notice nor privity need be alleged or proved in cases like the one before us. We do so not simply to eliminate these contractual limitations upon a claim for personal injury against a manufacturer based upon a breach of an express warranty (as was done long ago with respect to implied warranties) but, more importantly, to declare our agreement with the principles underlying the rule of strict tort liability and to record our intention of applying that rule in this type of case. That this view is consistent with sound public-policy considerations is indicated by our previous decisions disclosing the active role of this court in the development of the rules respecting a manufacturer's liability. Thus, in Schubert v. J. R. Clark Co. 49 Minn. 331, 51 N. W. 1103, 15 L. R. A. 818, we substantially abolished privity in negligence actions by a con-

sumer against the manufacturer. In Beck v. Spindler, 256 Minn. 543, 99 N. W. (2d) 670, we eliminated this requirement in actions by a purchaser against a manufacturer based upon implied warranties and expressly questioned whether the concept of privity ought not to be completely abrogated in product liability actions resulting in personal injuries." 278 Minn. 339, 154 N. W. 2d 500.

The result of McCormack was to bring warranty, negligence, and strict tort liability[4] theories of product liability into harmony to protect consumers and ultimate users from dangerous and defective products. An important part of the harmony thus achieved was the abolition of privity as a defense in actions involving any of those theories.

The Froysland case, discussed above, built on prior developments in holding that an employee was entitled to benefit from an express warranty to his employer when breach of that warranty had caused him to suffer personal injury. Based on Froysland and our other cases, we now extend the common law to allow recovery in this case.[5] The destruction of a home and physical damage to personal property is no less an injury to one who sustains them than a bodily injury. When a seller offers a Christmas tree with an express warranty concerning its flame-retardant qualities, he has every reason to expect that all members of the buyer's household will enjoy the benefits of the tree and that a natural and probable consequence of a breach of his warranty is fire and consequent damage to their property. Because a jury

---

[4] We adopted Restatement, Torts 2d, § 402A, in McCormack v. Hankscraft Co. Inc. 278 Minn. 322, 337, 154 N. W. 2d 488, 499 (1967).

[5] A further persuasive reason for extending the common law is the current public policy of Minnesota, as embodied in Minn. St. 336.2—318, which was amended in 1969 to allow recovery to one "who is injured" by the breach of warranty and thus would cover the property damage sustained here. In that statute, our legislature adopted Alternative C of U.C.C. § 2—318, which was first promulgated by the Uniform Commercial Code Commission after the adoption in 1965 of the statute at bar.

has found facts which support recovery under this extension of the common law, we affirm.

Affirmed.