**SUPERWOOD CORPORATION,**
**Plaintiff,**

v.

**SIEMPELKAMP CORPORATION and G. Siempelkamp & Company, Defendants.**

**No. 51867.**

Supreme Court of Minnesota.

Oct. 2, 1981.

Robins, Zelle, Larson & Kaplan, Robert M. Wattson and David Evinger, Minneapolis, Dorsey, Windhorst, Hannaford, Whitney & Halladay, William J. Hempel, Philip M. Chen, and Stephen R. Duerr, Minneapolis, for plaintiff.

Faegre & Benson, Norman R. Carpenter, Robert L. Schnell, Jr., and Brian B. O'Neill, Minneapolis, for defendants.

SCOTT, Justice.

This is a products liability case involving three questions certified to this court by the Federal District Court of Minnesota. The certified questions arise from a case involving the purchase by plaintiff, Superwood Corporation, of a hot plate press manufactured in 1954 by defendant, G. Siempelkamp. The press operated without problem from 1954 to 1975, when the cylinder on the hot plate press failed and could not be repaired. On March 12, 1979, three years after the cylinder failed, plaintiff brought this Federal District Court action based on negligence, strict products liability, breach of warranty, and breach of contract. Plain-

tiff sought $616,716 in damages because of alleged damage to the press and lost profits.

The federal court granted defendant's summary judgment motion on the contract and warranty claims.[1] With regard to the strict liability and negligence claims, the federal court certified three questions of "uncertain" state law to this court:

## CERTIFIED QUESTIONS

1. Is the manufacturer of defective equipment (a press) strictly [2] liable in negligence to the user of the equipment damaged in its property and business by negligent product manufacture, inspection, or installation supervision?

2. Is the manufacturer of defective equipment (a press) strictly liable in tort to the user of the equipment damaged in its property and business by the product defect?

3. If question 1 or 2, or both, are answered affirmatively, are any or all of the following items of damages recoverable, if directly caused by negligence or defect?

   a. Costs of replacement and transportation of a substantial component part of the product.

   b. Clean-up labor, including payroll taxes and employee fringe benefits.

   c. Repair, replacement, and other factory labor, including payroll taxes and employee fringe benefits.

   d. Costs of inspection of the destroyed part and the replacement thereof.

   e. Net sales value of production lost, less non-continuing expenses.

   f. Increased costs of production from other facilities of plaintiff to supply goods to its Bemidji Nu-Ply plant customers to keep their goodwill.

To answer these questions we must determine whether economic losses arising out of

1. The federal court dismissed the contract and warranty claims, finding that the statute of limitations had run on those claims.

2. It is our assumption that the word "strictly," as used in the certified question by the federal

court, was unintended, because strict liability and negligence are separate theories of recovery. The similarity of the first and second questions indicates that use of "strictly" in Question 1 was a clerical error.

commercial transactions are recoverable under negligence and strict products liability theories.[3] Defendant argues that when the Minnesota Legislature enacted the Uniform Commercial Code[4] (U.C.C.) it created a comprehensive statutory scheme for dealing with the rights and duties of parties to commercial sales transactions. Defendant contends that to allow a tort action would circumvent the system of rights and remedies detailed by the legislature in the U.C.C.

Many courts have considered defendant's argument, the first of which was the New Jersey Supreme Court in *Santor v. Karagheusian*, 44 N.J. 52, 207 A.2d 305 (1965). In *Santor*, a commercial plaintiff purchased defective carpeting from a retailer. The New Jersey court held that the plaintiff could proceed against the manufacturer under either strict products liability or the U.C.C.'s warranty provisions. In so holding, the *Santor* court decided that the U.C.C. did not provide the exclusive set of remedies for cases arising out of commercial transactions.[5]

Soon thereafter, the California Supreme Court considered the same issue in *Seely v. White Motor Company*, 63 Cal.2d 9, 45 Cal. Rptr. 17, 403 P.2d 145 (1965). The *Seely* court considered whether a plaintiff could, based on a strict products liability theory, recover the purchase price of a defective truck and the resulting loss of profits for lack of its normal use. In rejecting the *Santor* holding, Chief Justice Traynor, writing for the California court, recognized that the law of sales was designed to meet the needs of commercial transactions. The court refused to allow a form of recovery that would undermine the law of sales, and not reflect the understanding of the parties. *Id.* at 15, 45 Cal.Rptr. at 23–24, 403 P.2d at 151. The California court held that economic losses were not recoverable in an action based on strict products liability. In *dicta* the court also indicated that, even in actions based on negligence, economic losses were not actionable. *Id.* at 16, 45 Cal.Rptr. at 24, 403 P.2d at 151. The majority of jurisdictions that have considered this issue have followed the holding in *Seely*.[6]

Although this is a case of first impression in Minnesota, this court has already demonstrated its approval of *Seely* in *Farr v.*

---

**3.** The basic theory behind strict products liability is embodied in the Restatement (Second) of Torts 402A (1965) as follows:

> One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property, is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property * * *.

Strict products liability was adopted by this court in *McCormack v. Hankscraft Co.*, 278 Minn. 322, 154 N.W.2d 488 (1967).

**4.** The U.C.C. was enacted in this state on May 26, 1965. *See* Act of May 26, 1965, ch. 811, 1965 Minn. Laws 1290.

**5.** The *Santor* court may have "stretched" to allow tort remedies in order to avoid privity requirements that would otherwise have prevented any action against remote sellers of defective products. *See* Steenson, *The Anatomy of Products Liability in Minnesota: The Theories of Recovery*, 6 Wm. Mitchell L.Rev. 1, 50 n. 207 (1980). This reason for allowing tort recovery does not exist in Minnesota, since the Minnesota Legislature has adopted the most liberal privity alternative of the U.C.C., *see* Minn.Stat. § 336.2–318 (1980), and because this court has consistently avoided privity limitations, *see Durfee v. Rod Baxter Imports, Inc.,*

262 N.W.2d 349, 358 (Minn.1978), *noted in* 5 Wm. Mitchell L.Rev. 241 (1979); *Milbank Mutual Ins. Co. v. Proksch*, 309 Minn. 106, 113, 244 N.W.2d 105, 109 (1976); *McCormack v. Hankscraft Co.*, 278 Minn. 322, 339, 154 N.W.2d 488, 500–01 (1967); *Beck v. Spindler*, 256 Minn. 543, 562, 99 N.W.2d 670, 683 (1959); *Schubert v. J. R. Clark Co.*, 49 Minn. 331, 340, 51 N.W. 1103, 1106 (1892).

**6.** A number of jurisdictions have adopted the *Seely* position: *Iowa Elec. Light & Power Co. v. Allis-Chalmers Mfg. Co.*, 360 F.Supp. 25, 27–33 (S.D.Iowa 1973); *Miehle Co. v. Smith-Brooks Printing Co.*, 303 F.Supp. 501, 503 (D.Colo. 1969); *Morrow v. New Moon Homes, Inc.*, 548 P.2d 279 (Alaska 1978); *Beauchamp v. Wilson*, 21 Ariz.App. 14, 515 P.2d 41 (1973); *Long v. Jim Letts Oldsmobile, Inc.*, 135 Ga.App. 293, 217 S.E.2d 602 (1975); *Clark v. International Harvester Co.*, 99 Idaho 326, 581 P.2d 784 (1978); *Rhodes Pharmacal Co. v. Continental Can Co.*, 72 Ill.App.2d 362, 219 N.E.2d 726 (1966); *Marcil v. John Deere Industrial Equipment Co.*, 9 Mass.App. 908, 403 N.E.2d 430 (Mass.App.1980); *Hawkins Constr. Co. v. Matthews Co., Inc.*, 190 Neb. 546, 209 N.W.2d 643 (1973); *Ford Motor Co. v. Lonon*, 217 Tenn. 400, 398 S.W.2d 240 (Tenn.1966).

*Armstrong Rubber*, 288 Minn. 83, 179 N.W.2d 64 (1970). In *Farr*, this court stated:

Applying § 402A's concept of strict liability in tort will not result in absolute liability of the manufacturer, as Armstrong contends; *nor will it supersede the Uniform Commercial Code concept of strict liability in implied warranty, as some commentators fear.*

\* \* \* \* \* \*

*The laws of warranty still meet the needs of commercial transactions and function well in a commercial setting.* See, *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145. However, the Restatement theory of responsibility more adequately meets the public policy need to protect consumers from the inevitable risks of bodily harm created by mass production and complex marketing conditions. *McCormack v. Hankscraft Co., Inc., supra.*

*Id.* at 93–94, 179 N.W.2d at 70–71 (emphasis added).

The U.C.C. clarifies the rights and remedies of parties to commercial transactions. For example, there are specific provisions covering warranties, *see* Minn.Stat. § 336.2–314 (1980); warranty disclaimers, *see* Minn. Stat. § 336.2–316 (1980); liability limitations, *see* Minn.Stat. § 336.2–719 (1980); and notice provisions, *see* Minn.Stat. § 336.-2–607 (1980). The recognition of tort actions in the instant case would create a theory of redress not envisioned by the legislature when it enacted the U.C.C. Furthermore, tort theories of recovery would be totally unrestrained by legislative liability limitations, warranty disclaimers and notice provisions. To allow tort liability in commercial transactions would totally emasculate these provisions of the U.C.C. Clearly, the legislature did not intend for tort law to circumvent the statutory scheme of the U.C.C.

In *Cline v. Prowler Industries of Maryland, Inc.*, 418 A.2d 968 (Del.1980), the Supreme Court of Delaware held that, regarding sales transactions, the U.C.C. completely preempted the field of products liability.

According to the Delaware court even an injured consumer purchaser would have to look to the U.C.C. for the sole source of remedies. We, however, do not agree that the U.C.C. was intended to preempt the entire area of products liability. Strict products liability developed in large part to fill gaps in the law of sales with respect to consumer purchasers. *See* Noel, *Products Liability of Retailers and Manufacturers in Tennessee*, 32 Tenn.L.Rev. 207 (1965); Prosser, *The Assault Upon the Citadel* (Strict Liability to the Consumer), 69 Yale L.J. 1099, 1124–34 (1960); Traynor, *The Ways and Means of Defective Products and Strict Liability*, 32 Tenn.L.Rev. 363 (1965). Limiting the application of strict products liability to consumers' actions or actions involving personal injury will allow the U.C.C. to satisfy the needs of the commercial sector and still protect the legitimate expectations of consumers.

For these reasons, we hold that economic losses that arise out of commercial transactions, except those involving personal injury or damage to other property, are not recoverable under the tort theories of negligence or strict products liability. We therefore answer certified questions 1 and 2 in the negative. Because of our resolution of the first two questions, we need not discuss the third certified question.

YETKA, Justice (concurring in part and dissenting in part).

I concur in that portion of the majority opinion that concludes that strict liability in tort cannot be asserted by a commercial plaintiff as a ground for recovery of purely economic injury.

I must dissent, however, to that portion of the majority opinion that concludes that the negligence of a manufacturer cannot be asserted by a commercial plaintiff as a ground for recovery of economic injury.

Actions based on negligence have long been recognized in commercial contexts in this state. *See Nieman v. Channellene Oil & Mfg. Co.*, 112 Minn. 11, 127 N.W. 394 (1910) (retailer recovered damages from the

wholesaler for loss of business resulting from the sale of contaminated cooking oil); *Ellis v. Lindmark*, 177 Minn. 390, 225 N.W. 395 (1929) (recovery allowed for economic damages to plaintiffs' poultry business resulting from, *inter alia*, wholesaler's mislabeling of raw linseed oil as cod liver oil). The majority is, therefore, abrogating rights long recognized to exist in commercial plaintiffs.

There is no indication that the legislature intended to preempt negligence recovery when it enacted the Uniform Commercial Code (UCC). There are no references in the text or the comments of the UCC from which such preemption can be inferred. Moreover, Minn.Stat. § 336.1–102(3) (1980) provides that the general obligations of the UCC, such as "reasonableness" and "care," may not be disclaimed by agreement. This strongly suggests that the legislature had no interest in protecting negligent commercial parties.

Legislative enactments are not to be construed in derogation of well-established principles of common law unless the express language or the necessary implications of the particular statute require such construction. *Fuller v. City of Mankato*, 248 Minn. 342, 347, 80 N.W.2d 9, 12 (1956); *Swogger v. Taylor*, 243 Minn. 458, 465, 68 N.W.2d 376, 382 (1955). Because there is no clear indication of preemption in this case, I believe the action for negligently inflicted economic loss in commercial contexts survives the enactment of the UCC.

Further, there is no basis for the contention that negligence recovery for economic loss would "emasculate" the remedies provided through the UCC. *Cf. Santor v. A. & M. Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1965) (allowing implied warranty recovery).[1] The remedies provided by the UCC merely supplement the negligence theory of recovery. UCC 2–318, Comment 2, indicates that the expansion of existing warranties to the buyer's household and guests should be "accomplish[ed] * * * without any derogation of any right or remedy resting on negligence." This is a significant indication that the UCC is not designed to exclude negligence from its scheme of remedies.

The continued recognition of negligence recovery for economic loss will not diminish the use or effectiveness of the Code remedies but merely provide an additional means of compelling production of quality manufactured goods. The majority's decision effectively restricts the ability of commercial purchasers to require the manufacturers to provide products that will not result in damage to property. The duty to which manufacturers can be held under negligence standards is not so onerous that this court must step in to relieve them of that duty.

Finally, under the majority opinion, distribution of defective products is only subject to a negligence action when the defect results in personal injury or damages to other property. It seems to me imprudent to permit manufacturers to sell negligently produced and potentially dangerous products and only to make them accountable when a person is harmed or other property is damaged. The better approach is to require accountability when any injury, economic or otherwise, occurs. Insistence on such accountability will provide a definite incentive to manufacture only quality products that ensure the safety of all consumers.

SHERAN, C. J., took no part in the consideration or decision of this case.

1. In addition, see *Cova v. Harley Davidson Motor Co.*, 26 Mich.App. 602, 609–11, 182 N.W.2d 800, 806–10 (1970); *Russell v. Ford Motor Co.*, 281 Or. 587, 588–93, 575 P.2d 1383, 1384–86 (1978); *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 80–83 (Tex.1977); *Berg v. General Motors Corp.*, 87 Wash.2d 584, 587–94, 555 P.2d 818, 819–23 (1976); *City of La Crosse v. Schubert, Schroeder & Assocs.*, 72 Wis.2d 38, 43–45, 240 N.W.2d 124, 127–28 (1976).