**STATE of Minnesota, Plaintiff,**

v.

**Robert J. PATTEN, et al., Defendants and Third–Party Plaintiffs, Appellants,**

v.

**FLAG SAS, et al., Third–Party Defendants,**

**Watpro, Inc., Third–Party Defendant, Respondent.**

**No. C4–87–1286.**

Court of Appeals of Minnesota.

Dec. 8, 1987.

Kurt D. Johnson, Gislason, Dosland, Hunter & Malecki, New Ulm, for appellants.

Gordon J. Apple, Maun, Green, Hayes, Simon, Johanneson and Brehl, St. Paul, for respondent.

Heard, considered and decided by SEDGWICK, P.J., and PARKER and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Appellant Patten Roofing Company, defendant and third party plaintiff in an action commenced against it by the state of Minnesota, appeals from an award of summary judgment to respondent (third party defendant in the state's action) Watpro, Inc., a Pennsylvania corporation, on claims of breach of express and implied warranties and negligence. We affirm in part, reverse in part and remand.

## FACTS

Appellant contracted with the state of Minnesota in late 1979 to roof a part of the Highland Arena at Mankato State University. Architectural design work on the project was performed by Kagermeier–Skaar Architects. Appellant subsequently contracted with MacArthur Co. to buy a poly vinyl chloride (P.V.C.) membrane known as Flagon, manufactured in Italy by Flag SAS. MacArthur ordered the Flagon from respondent, which is Flag's exclusive agent. Respondent Watpro shipped the P.V.C. membrane to appellant together with the Flag SAS five year manufacturer's warranty. Foam insulation for the roof was manufactured and installed by a company not involved in this appeal.

Upon completion of the roof on May 16, 1980, appellant gave the state a five year roofing guarantee in which it promised to repair any faults. The state reported problems with the roof to appellant in June and November of 1980, and in February, June and July of 1981. Despite several repair attempts, appellant was unable to make the roof water tight. Consequently, on May 15, 1985, one day before the five year guarantee expired, the state brought an action against appellant for breach of warranty.

Subsequently, appellant brought third party actions against respondent, Flag SAS, MacArthur Co., United Foam Co., Gag Sheet Metal, Inc., and Kagermeier–Skaar Architects. Appellant's claims against respondent alleged that as Flag's agent, respondent was in breach of its express and implied warranties and had negligently instructed appellant regarding application of the Flagon.

On October 1, 1986, respondent moved for summary judgment against appellant. The trial court found that:

[Appellant] was first made aware of problems with the roof on June 30, 1980, when it was informed of insulation problems. Additional repairs, of an undisclosed nature, were requested by the State on November 14, 1980. During 1981, the State complained of roof leaks twice in February, once in June, and once in July. Certainly by this time [appellant] had discovered or should have discovered that a breach had occurred.

The court concluded that appellant's notice to respondent was not given within a reasonable time as required by the Uniform Commercial Code.

On October 20, 1986, appellant brought a motion requesting reconsideration of the summary judgment. In an affidavit accompanying the motion to reconsider, appellant claimed its business records indicated that on July 20, 1981, respondent itself had requested that appellant investigate a problem with the roof, and that communication between appellant and respondent took place in July 1981 and in March, April and October of 1982. Appellant contended that respondent was "on the construction site

when the roof was being installed;" that the "roof was installed pursuant to [respondent's] instructions and under their supervision;" and that respondent was "actively involved in trying to correct the problems" prior to November 1982. In addition, appellant asserts that Flag SAS, through respondent, extended its manufacturer's warranty for five more years. Respondent did not submit an affidavit to refute these contentions.

The record before the trial court also contained an affidavit from Kagermeier–Skaar which stated that roof insulation problems arose in June 1980. The affidavit indicated that at least nine requests for repairs were made between June 1980 and September 1983. However, according to the affidavit, problems with leakage were first noted in February of 1981. Deterioration of the Flagon membrane was noted in October of 1982.

During the trial court's reconsideration of the summary judgment motion, appellant argued that the five year manufacturer's warranty was issued through respondent and that respondent was bound by the terms of that warranty. Upon reconsideration, the trial court held:

> Even assuming for purposes of this motion that Flag executed the warranty and extension through its agent, [respondent], this does not bind all the third-party defendants. The general rule applicable here is that an agent who acts within the scope of his authority for a known principal is not liable on the contracts he enters on behalf of that known principal. *Kost v. Peterson*, 292 Minn. 46, 49, 193 N.W.2d 291, 294 (1971).

Thus, the claim for breach of the express warranty against respondent was dismissed.

Upon reconsideration of the breach of implied warranty claim, the trial court found:

> [Appellant] knew of the roof's problems beginning in June or July, 1980, while [respondent] learned of the problems in July 1981 * * *. [T]here was approximately a one-year delay between the time [appellant] knew or should have known of the defects and the time [respondent] learned of the problems.

The court considered appellant's affidavit and drew "all inferences from [the] new evidence in [appellant's] favor" but concluded that the thirteen month delay between appellant's discovery of the defect in June 1980 and the contact with respondent in July 1981 was not notice within a reasonable time.

Additionally, the trial court found that "mere knowledge" of the problems with the roof did not constitute notice of a breach of warranty. The court dismissed the language in Article 2–607, comment 4 that notice of a breach need only let the seller know that the transaction is "troublesome and must be watched" as inadequate and determined that "notice must be more precise than the comment indicates." In the language of the trial court:

> [A]dequate notice under [subsection 2–607(3)(a)] at least contemplates some affirmative communication from buyer to seller in which the buyer states that it finds seller's performance inadequate under their agreement and intends to hold seller legally responsible for performance of its obligations.

Finally, the court considered but delayed its decision on appellant's negligence claim. On February 23, 1987, after release of *Valley Farmers' Elevator v. Lindsay Bros. Co.*, 398 N.W.2d 553 (Minn.1987), summary judgment was granted to respondent on the negligence claim also. At issue on appeal are all three claims: breach of express warranty, breach of implied warranty and negligence.

## ISSUES

1. Was appellant's breach of express warranty claim properly dismissed?

2. Was appellant's breach of implied warranty claim properly dismissed?

3. Was appellant's negligence claim properly dismissed?

## ANALYSIS

This court will affirm an award of summary judgment if upon review we deter-

mine that there were no issues of material fact before the trial court and that the judgment was proper as a matter of law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979).

Although appellant originally argued that it was entitled to contribution and indemnity from respondent and that for the purposes of notice its cause of action against respondent arose when appellant was sued by the state, appellant now appears to concede that the purchase of Flagon through respondent was a commercial transaction governed by Article 2 of the Uniform Commercial Code. Because notice of a breach by respondent is governed by Minn.Stat. § 336.2–607 (1978), we will address the breach of warranty issues with reference to the appropriate U.C.C. provisions.

## I.

■ In addressing the breach of express warranty issue, the trial court cited *Kost v. Peterson,* 292 Minn. 46, 193 N.W.2d 291 (1971) in support of its ruling that as Flag's agent, respondent was not bound by the manufacturer's warranty. We agree that the mere sale of the goods together with transmission of a manufacturer's warranty does not bind an agent. The agent must itself adopt the manufacturer's warranty to be bound by its terms. *See, e.g., Pemberton v. Dean,* 88 Minn. 60, 92 N.W. 478 (1902). We can find no evidence in the record to indicate that respondent adopted Flag's warranty. Therefore, the trial court's award of summary judgment to respondent on the issue of breach of express warranty was proper.

## II.

■ Respondent does not dispute that it was a "seller" under the U.C.C., and that as such it is bound by implied warranties. However, before a seller may be found liable for breach of implied warranty it must receive timely and adequate notice of the breach from the buyer. The trial court found that appellant provided neither timely nor adequate notice to respondent.

Therefore, we shall address both aspects of the notice requirements.

Minn.Stat. § 336.2–607(3)(a) provides:

[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.

*Id.* The trial court cited *Truesdale v. Friedman,* 270 Minn. 109, 132 N.W.2d 854 (1965), a pre-U.C.C. case, in concluding that appellant's notice to respondent was untimely as a matter of law. The *Truesdale* court stated:

The Minnesota authorities have uniformly required notice to the seller in situations alleging breach of warranty. * * *

The question arises whether plaintiffs failed, as a matter of law, to give the notice required by § 512.49 of any alleged breach of warranty within a reasonable time. * * *

Even when considered in the light most favorable to plaintiffs, the record appears to indicate that at least 12 to 23 months elapsed between plaintiff's actual awareness of any alleged defects and their first notification that they claimed damages * * *.

The standard as to the reasonableness of the delay is not changed although the defect may be latent or hidden. The date when the buyer becomes aware or should have become aware of the claimed defect fixes the time from which the delay commences and from which the reasonableness or the unreasonableness of the delay must be determined. * * *

A delay in notification from 12 to 23 months, apparently established by the record in this case, would be unreasonable as a matter of law when the buyer is aware, or should be aware, of the defect.

*Id.* at 119–121, 132 N.W.2d at 861–62. Appellant asserts, in effect, that because the roofing in this case consisted of not only the Flagon membrane and tar, but insulating material and metal as well, it was impossible in June 1980 (and indeed is impossible even at present) to determine which, if any, of the products was at fault. There-

fore appellant urges it should not be charged with knowledge in June 1980 of a defect in the Flagon itself, and argues that the trial court erroneously applied *Truesdale* in calculating a thirteen month delay in notification to respondent.

Our independent review of the record indicates that, indeed, the problem with the roof was complex. One or more of several material components might have been the cause of the problems. In this context, we must address documentary evidence in the record which does not appear to have been addressed by either party or by the trial court. Kagermeier–Skaar filed an affidavit indicating that the first roofing problem was with the insulation. More importantly, the affidavit indicated that the first recorded leakage in the roof occurred in February 1981. Respondent does not contest that leakage would be an indication of a defect in the membrane itself rather than of defects within the insulation or some other component of the roof.

The trial court makes no reference to the February 1981 date, but only to June 1980 in computing the thirteen months which it found to be unreasonable. However, if the first notice of problems with the Flagon itself and notice to respondent of those problems were separated by a period of only five months, the *Truesdale* rationale would be inapplicable.

■ We must assume that the trial court, in calculating the length of the delay, believed that appellant had a duty to notify respondent of any problem whatsoever with the roof. We believe that under the circumstances of this case such a burden is too onerous. We remand this issue to the trial court for its determination of the date upon which appellant was first made aware of the problem with the Flagon membrane itself.

■ We next address the issue of the adequacy of appellant's notice to respondent. We note initially that the trial court relied upon certain comments contained in

the U.C.C. Comments to Minn.Stat. § 336 are derived from two sources: the official comments to the Uniform laws themselves, and the Minnesota comments. Comment 4 to subsection 2–607(3) of the Uniform Laws states that adequate notice must let the seller know that the "transaction is still troublesome and must be watched" and "need only be such that the transaction is claimed to involve a breach and thus open the way for normal settlement through negotiation." However, the trial court appeared to place its reliance on the Minnesota comment to Minn.Stat. § 336.2–607(3)(a) which states:

> This subsection does not change the requirement that the notice must be of a claim for damages for breach and that a vague complaint about quality is not sufficient.

*Id.* Our review of the case law causes us to conclude that, once again the trial court placed too onerous a burden upon appellant with regard to adequacy of notice.[1] In *Moosbrugger v. McGraw–Edison Company*, 284 Minn. 143, 170 N.W.2d 72 (Minn. 1969), the court found that complaints made in a letter relating to malfunctioning dry cleaning machines were sufficient to provide adequate notice:

> The contents of [Moosbrugger's] letter * * * clearly were sufficient to put [McGraw–Edison] on notice that the machines were not working properly and that [Moosbrugger] felt the machines had been "misrepresented" to him. Although this was not an express claim for damages, * * * the letter was both sufficient and timely notice for the purposes of [the Uniform Sales Act].

*Id.* at 156, 170 N.W.2d at 80. While the *Moosbrugger* court did not specifically reject the Minnesota comment which appears in section 336.2–607, it did appear to prefer comment 4 to Article 2–607 in the Uniform Code. *Id.* at 154, 170 N.W.2d at 79. We can find no Minnesota decision construing the adequacy of notice under Minn.Stat. § 336.2–607.[2] *Moosbrugger* has been sub-

---

**1.** We note that *Truesdale,* cited in the Minnesota comment to 336.2(3)(a) was primarily concerned with timeliness of notice, not with its adequacy.

**2.** Minnesota adopted section 2–607(3) of the U.C.C. without modification.

sequently cited with approval in *Northern States Power Company v. ITT Meyer Industries*, 777 F.2d 405, 408 n. 2 (8th Cir. 1985) which held that the notice which satisfies Minn.Stat. § 336.2–607(3)(a) "need only be such that informs the seller that the transaction is troublesome and needs to be watched." *Id.* at 408. Appellant contends and respondent does not deny that respondent requested and was sent samples of the Flagon from the roof. In correspondence between appellant and respondent in 1982, respondent wrote "I hope that we can speed up whatever needs to be done to make the corrective measures * * *." We believe the record contains ample evidence that the notice given and received met the standard set forth in *Northern States Power Company.*

Finally, because it awarded summary judgment to respondent on other grounds, the trial court was not required to reach the issue of whether the U.C.C. statute of limitations barred appellant's claims.[3] However, on remand the trial court is directed to address this issue.

### III.

■ Appellant, although recognizing the applicability of U.C.C. provisions to its warranty claims against respondent, alleges that a negligence claim may be maintained because respondent not only supplied goods for the roof construction, but performed services as well. The trial court disagreed and awarded summary judgment to respondent on the negligence claim, stating:

> While the alleged provision of instructions and supervision by [respondent] could arguably constitute services, the Court recognizes that this transaction is predominantly one for the sale of goods. There are no allegations or evidence to show that [appellant] contracted for instructions or supervision by [respondent], or that the purchase price of the materials included an amount for services. The transaction was mainly one for

the sale of goods, with the alleged instructions and supervision merely incidental. Applying the test of cases such as *Bonebrake v. Cox*, 499 F.2d 951, 960 (8th Cir.1974), the Court concludes as a matter of law that the agreement between [appellant] and [respondent] was predominantly for the sale of goods.

In *Bonebrake*, the court addressed the application of U.C.C. provisions to a contract that contained both goods and services:

> [T]he cases presenting mixed contracts of this type are legion. The test for inclusion or exclusion is not whether they are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved * * * or is a transaction of sale, with labor incidentally involved * * *.

*Bonebrake*, 499 F.2d at 960. Recently, the Minnesota Supreme Court also addressed the issue of "whether and under what circumstances a hybrid contract involving the sales of goods and the provisions of services falls within the statutory scheme of the U.C.C." *Valley Farmers*, 398 N.W.2d at 555. The *Valley Farmers* court stated:

> It would now seem appropriate for this court to engage in a more detailed examination of such a hybrid contract in accordance with the guidelines discussed in [*Bonebrake*]. Recognizing that the sale of goods is often accompanied by the rendition of services either incidental to or an integral part of that sale, [the *Bonebrake* court concluded] that the fact that substantial labor was involved in the contract does not necessarily exclude the transaction from coverage under the Code. The court then enunciated the "predominant factor" test by which a hybrid contract, such as the one before it, might properly be characterized. The question as to the classification of a hybrid contract is generally one of law.

**3.** Minn.Stat. § 336.2–725(1) provides that an action for breach of warranty must be brought within four years after the cause of action has accrued.

We adopt the "predominant factor" test, * * *.

 \*     \*     \*     \*     \*     \*

The time for testing whether a transaction is a sale of goods—i.e., a sale of movable things—is at the time of identification to the contract * * *.

*Id.* at 556. We believe the trial court's application of the *Bonebrake* and *Valley Farmers* analyses to the facts of this case was sound. Appellant presented no evidence from which the trial court could have determined that services predominated in the contract between the parties. Instead, as a contract predominantly involving the sale of goods, the relationship between these parties is governed solely by the U.C.C. and by the rationale expressed in *Superwood Corporation v. Siempelkamp Corporation*, 311 N.W.2d 159 (Minn.1981).

The U.C.C. clarifies the rights and remedies of parties to commercial transactions. * * * To allow tort liability in commercial transactions would totally emasculate these provisions of the U.C.C. Clearly, the legislature did not intend for tort law to circumvent the statutory scheme of the U.C.C.

 \*     \*     \*     \*     \*     \*

[W]e hold that economic losses that arise out of commercial transactions, except those involving personal injury or damage to other property, are not recoverable under the tort theories of negligence or strict products liability.

*Id.* at 162. Award of summary judgment to respondent on appellant's negligence claim was proper.

## DECISION

Without evidence that respondent adopted the manufacturer's express warranty, the trial court properly denied appellant's claim that respondent was bound thereby. The trial court erred when it determined that appellant's notice to respondent of an alleged breach of implied warranty was untimely as a matter of law and inadequate. The trial court's determination that the negligence claim was barred by the *Superwood* doctrine was proper.

Affirmed in part, reversed in part and remanded for trial.