LLOYD F. SMITH COMPANY, INC., et al., Petitioners, Appellants,

v.

DEN–TAL–EZ, INC., Emerson Electric Co., Respondents.

No. C6–91–841.

Supreme Court of Minnesota.

Oct. 23, 1992.

Joseph F. Lulic, Julianne M. Fiedler, Hanson, Lulic & Krall, Minneapolis, for petitioners-appellants.

Mark A. Gwin, Cousineau, McGuire & Anderson, Minneapolis, for Den–Tal–Ez, Inc.

George W. Flynn, Hal A. Shillingstad, Minneapolis, for Emerson Elec. Co.

SIMONETT, Justice.

This case raises the question whether the "economic loss" rule bars suit in negligence or strict liability against the seller-manufacturer of a defective product for damages to other property. The court of appeals ruled a tort action was barred. We reverse.

On January 15, 1988, a fire started in the dental office of Dr. Thomas Vukodinovich. The dental office was located on the upper floor of a two-story building on Snelling Avenue in St. Paul, owned by Lloyd F. Smith Company. The cause of the fire is alleged to be Dr. Vukodinovich's motorized dental chair. There were three other tenants in the building: Village Travel Service, Inc., Dr. B. Wright, and Benefit Trust Life Insurance Company. There were no

personal injuries, but the fire caused substantial damage to the building, to the property of the other tenants, and to other property in the dental office including items stored there by a second dentist. Dr. Vukodinovich, the building owner, the second dentist, and the other tenants all commenced suit against defendant Den–Tal–Ez, the manufacturer-vendor of the motorized dental chair, and Emerson Electric, the manufacturer of the chair's motor, suing both in tort and for breach of warranties.

The dental chair was purchased new from Den–Tal–Ez sometime prior to 1975 by Dr. Jack Shepard. In 1975, Dr. Shepard sold his practice, including the chair, to Dr. Richard Stoffel. In 1978 Dr. Stoffel moved his practice to the Snelling Avenue building and, in 1987, sold his practice, including the chair, to Dr. Vukodinovich, who continued to use the chair until the fire. Thus at least 13 years elapsed from the time the chair was first purchased until the time it allegedly caught fire.

On defendant's motions for summary judgment, the trial judge ruled that plaintiffs' claims were for "other property" damages in a commercial transaction, for which the Uniform Commercial Code provides the exclusive remedy; that the Code's 4–year statute of limitations barred plaintiffs' breach of warranty claims; and, therefore, defendants were entitled to summary judgment. The court of appeals affirmed. *Lloyd F. Smith Co., Inc. v. Den–Tal–Ez*, 478 N.W.2d 510 (Minn.App.1991). We granted plaintiffs' petition for further review of the denial of their tort claims.

In *Superwood Corp. v. Siempelkamp Corp.*, 311 N.W.2d 159 (Minn.1981), we held that economic losses arising out of commercial transactions, except those involving personal injury or damage to other property, are not recoverable under the tort theories of negligence or strict liability. It was important, said *Superwood*, that tort law not be employed to circumvent and emasculate the statutory scheme of the U.C.C. Two exceptions to the Code's exclusivity were, however, recognized: (1) tort claims for personal injury and (2) tort claims for damages to "other

property," *i.e.*, property other than the defective product itself. Subsequently, however, in *Hapka v. Paquin Farms*, 458 N.W.2d 683, 688 (Minn.1990), we ruled:

[I]n our judgment the Uniform Commercial Code must control exclusively with respect to damages in a commercial transaction which involves property damage only, and any statement or implication to the contrary in *Superwood* and its progeny is hereby expressly overruled.

The damages sought by plaintiffs in this case are indisputably for "other property." In the fire plaintiffs lost computer equipment, records, machinery, furniture, plus other tangible items, and the building itself was damaged, all property separate from the allegedly defective dental chair. The trial judge and the court of appeals read *Hapka* to deny a tort remedy whenever a product defect causes damage to other property, and, therefore, dismissed plaintiffs' actions.

Defendant-respondents argue that contract warranty remedies must govern here because plaintiffs' claims arise out of a "commercial setting." The sale of the dental chair some 13 years before the fire, they argue, was a commercial transaction involving two commercial manufacturing entities as the sellers and a buyer who used the chair in his professional practice and for commercial gain. As for the fact that Dr. Vukodinovich purchased the dental chair secondhand—indeed, he was the third owner of the chair—defendants point out that the U.C.C., as adopted and applied in Minnesota, has an extremely liberal privity position that affords U.C.C. protection to sub-purchasers. Defendants also point out the court of appeals has twice held that property damage caused by defective products purchased secondhand do arise from commercial transactions, and has denied the availability of tort remedies for such damages. *Nelson v. International Harvester Corp.*, 394 N.W.2d 578, 581 (Minn. App.1986) (secondhand purchaser of combines); *TCF Banking & Savings, F.A. v. Marshall Truss Systems, Inc.*, 466 N.W.2d 49 (Minn.App.1991) (subsequent purchaser of a building). On the other hand, plaintiff-

appellants claim they were never parties to a "commercial transaction" involving the chair. Dr. Vukodinovich says he was only a "casual buyer," while the other plaintiffs point out they never had anything to do with the chair.

## I.

The courts have not had an easy time in determining the appropriate interplay between tort and contract remedies for losses caused by a defective product.[1] The critical problem has been to find some principled basis for deciding when breach of warranty lies exclusively and when the tort remedies of negligence and strict liability may apply also. Sometimes (when the focus is on the status of the parties) it is said the Code applies exclusively if the parties are sophisticated commercial entities or merchants.[2] Sometimes (when the focus is on the nature of the risk) it is said the tort claim lies where the defective product is unreasonably dangerous from a safety standpoint, not just defective from a performance or quality standpoint.[3] Finally (when the focus is on the happening of the injury-producing event), it has been proposed by some courts that a product which simply deteriorates gives rise to a breach of warranty claim, while a product that results in a sudden and calamitous occurrence indicates a tort claim.[4]

While these tests are useful in determining whether a contract or tort action might apply in a particular case, they are less helpful in determining whether if both liability theories can apply, if the contract

breach of warranty remedy should be exclusive. Particularly is this so since the advent of strict liability. Although strict liability is a tort, it is really a stripped-down model of a breach of warranty claim, with the result that the two remedies frequently overlap. When this occurs, courts ask whether the loss involved is "economic"[5] and whether it arises from a "commercial transaction." But what courts are really asking is whether allowing the tort remedy concurrent with breach of warranty would undermine the Uniform Commercial Code.

The problem of overlap is seemingly complicated by the doctrine of privity in the law of sales. Because of privity, the warranty protection of a sales contract extends to subpurchasers of the defective product and to third parties in privity, indeed, to "any person who may reasonably be expected to * * * be affected by the goods and who is injured by the breach of warranty." Minn.Stat. § 336.2–318 (1990). Should, then, the Code's breach of warranty remedy be exclusive for subpurchasers (who did not buy from the original seller) and for third party privity beneficiaries (who had nothing to do with the sale of the defective product)?

As the Code's warranty mantle extends out beyond the immediate sale, the less need there is to deny to those on the periphery of the sales transaction access to tort as well as contract remedies. There is less likelihood, in such cases, of the U.C.C. being undermined by allowing concurrent

---

1. For a collection of the cases from different jurisdictions, see Am.Law of Products Liability (3d) § 60:39 et seq. (1991).

2. Hapka v. Paquin Farms, 458 N.W.2d 683, 688 (Minn.1990); S.J. Groves & Sons v. Aerospatiale Helicopter, 374 N.W.2d 431, 434 (Minn.1985).

3. 80 South Eighth Street Limited v. Carey–Canada, Inc., 486 N.W.2d 393 (Minn.1992).

4. See S.J. Groves and Sons Co. v. Aerospatiale Helicopter Corp., 374 N.W.2d 431, 435 (Minn. 1985), where the court declined to adopt the "sudden and calamitous" distinction, suggesting it is a rather nebulous and arbitrary distinction.

5. The term "economic loss," we might add, can be somewhat confusing, if not understood in

context. Damages for loss of property and for consequential damages caused by a defective product are generally recoverable, at least in this state, either by a breach of warranty action or a tort action. See, e.g., Nieman v. Channellene Oil & Mfg. Co., 112 Minn. 11, 127 N.W. 394 (1910); Ellis v. Lindmark, 177 Minn. 390, 225 N.W. 395 (1929). When these damages are recoverable in a breach of warranty action, they are called an "economic loss" but when recovered in a tort action they are said to be noneconomic damages. Thus the term "economic loss" is a useful shorthand phrase in the law of sales for contract damages, but it is no help in determining whether a contract or tort remedy should apply to a particular set of facts.

tort remedies. On the other hand, the closer the remedy comes to the very heart of the sales transaction, the more need there is to preserve the integrity of the Code.

When there is a claim by a buyer for damage to the defective product itself (and this includes consequential damages), the U.C.C. remedy is exclusive and tort will not lie. This is what *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), *Superwood*, and *Hapka* all hold. A subpurchaser is also limited to the U.C.C. remedy. In this situation, the product, because of some defect, fails to function as it should; in other words, the product lacks its bargained-for value and fails to meet the buyer's or sub-buyer's performance expectations. This is exactly the kind of loss that the Code and its warranty protections are designed to cover. This economic loss includes consequential damages for repair and loss of profits resulting from inability to use the defective product during the period of its replacement or repair. *See* Minn.Stat. § 336.2–714 (1990); *Seely*, 45 Cal.Rptr. at 22, 403 P.2d at 150. These claims for the defective product itself necessarily implicate the buyer and the seller, with, under sales law, "buyer" including subpurchasers as well as the original purchaser, and "seller" including the manufacturer and suppliers as well as the retailer. To allow recovery in negligence or strict liability in this situation would override the warranty agreements of the sales contract and create risk exposures incompatible with a commercial transaction. Therefore, exclusivity governs.

When, however, the defective product causes damage to "other property," the-risk-of-loss dynamics change subtly. In *Seely* and *Superwood,* as we pointed out in *Hapka*, there was no claim made for damage to other property. *See also Minneapolis Society of Fine Arts v. Parker–Klein,* 354 N.W.2d 816 (Minn.1984) (holding that a brick building was the defective product not just the defective bricks, so that the building was not "other property").

## II.

It is against this background that *Hapka* must be understood. In *Hapka* there was a claim for other property damaged by the defective product. The seller sold the buyer seed potatoes which proved to be diseased, with the disease spreading to other seed potatoes also planted by the buyer. The buyer sought property damages not only for loss of the defective potatoes, but also for damages for loss of other property, *i.e.*, for loss of his other healthy seed potatoes which became infected. We held the buyer was limited to his Code remedy, stressing that the seller and buyer were both knowledgeable dealers in seed potatoes and of relatively equal bargaining power. In short, this was a classic case of a sale between merchants in goods of the kind where, we said, the Code exclusively governs even as to other property. Significantly, however, we noted that some "other property" claims caused by a defective product remained recoverable in tort. For example, if a defective coffee pot starts a fire which burns down a building, the coffee pot purchaser could sue in tort as well as in breach of warranty for damages to the building. In such a case, we said, the customer was a consumer, lacking the bargaining status of the purchaser in a classic commercial transaction, and should be allowed the "panoply" of legal remedies. *Hapka*, at 688.

In other words, if the buyer of a defective product is not a merchant dealing with another merchant in goods of the kind, the buyer is not precluded from suing in tort as well as contract for damage to his other property. When the property damaged is not the property that was the subject of the sale, there is less reason, as between unequal contracting parties, to restrict the purchaser to his warranty remedies under sales law. Such property losses can be substantial—witness the coffee pot and the destroyed building. But more importantly, allowing tort liability in these cases does not undermine the Code's primary role in regulating risk of loss of the defective product itself.

Even more so, then, should third parties who sustain property damage because of a defect in someone else's product, be entitled to sue in tort. There is no good reason not to be able to do so. The third party may or may not be in privity with the buyer; it all depends on whether the loss could reasonably have been expected to involve the third party. But even if there is privity and a breach of warranty claim would lie, these ties of privity are not so close to the basic sales transaction as to justify denial of a concurrent tort remedy. The third party's damaged property was not the subject of the sale to which the defendant seller was a party, nor was the third party in any way a participant in the contractual arrangements involving the defective product.[6]

There is another policy factor involved too. Ordinarily the plaintiff injured by a defective product pleads both contract and tort theories, and recovery is made on one or the other, or both—or none. Each theory has its own variations of proof, but exclusivity of the contract remedy becomes especially acute when the statute of limitations becomes an issue. In *Superwood*, 21 years elapsed before the defect caused injury; in the case now before us, over 13 years have gone by. The limitation period for tort claims is six years, while four years for a warranty claim. The significant difference is not in the two years, however, but in the fact the tort limitation period does not begin to run until an injury occurs, while the statute of limitations for breach of warranty begins to run on the seller's tendering delivery of the goods. Minn.Stat. § 336.2–725 (1990). In considering Code exclusivity, then, the concerns of sellers for limited exposure (both as to time limitations and kinds of injury) must be balanced with the concerns of those who are injured in person or property by a defective product.

So it is, then, that in a classic commercial transaction involving experienced merchants engaged in the buying and selling of their stock in trade, the business need for reasonable containment of the risk of a defective product is met by providing an exclusive warranty remedy with a relatively short statute of limitations. On the other hand, when the defective product causes personal injury, an injury which may occur many years after the sale, the law's concern for compensating personal injury outweighs the commercial need for a relatively short limitation period and traditional tort remedies are permitted. When this court adopted strict liability for personal injury from a product defect, we said we were doing so because, where personal injury is involved, the warranty remedy with its restrictive requirements of privity and notice of breach "does not appeal to our sense of justice." *McCormack v. Hankscraft Co.,* 278 Minn. 322, 337, 154 N.W.2d 488, 499 (1967). *See also 80 South Eighth Street Limited Partnership v. Carey–Canada, Inc.,* 486 N.W.2d 393 (Minn.1992) (the alleged potential health hazard of asbestos fibers is sufficiently akin to a personal injury claim as to create an exception to the economic loss rule). Elsewhere we have said, "The destruction of a home and physical damage to personal property is no less an injury to one who sustains them than a bodily injury." *Milbank Mut. Ins. Co. v. Proksch,* 309 Minn. 106, 115, 244 N.W.2d 105, 110 (Minn.1976) (defective Christmas tree caused fire damage to house). Consequently, when the defective product causes damage to other property outside the classic mercantile transaction, our sense of justice dictates that here, too, the more restrictive warranty remedy should not pre-

---

**6.** The notion that third persons are free of the restrictions of a contract was at one time expressly incorporated into the Uniform Commercial Code. Section 1–102(3)(b) of the Code stated: "Except as otherwise provided by this Act the rights and duties of a third party may not be adversely varied by an agreement to which he is not a party or by which he is not otherwise bound." *See Girard Trust Corn Exchange Bank v. Warren Lepley Ford, Inc.,* 12 Pa.D. & C.2d 351, 1 U.C.C. 495 (C.P.1957). Although U.C.C. § 1–102(3)(b) has been dropped from the Code, its teaching appears to still inform Code transactions: "This subsection was eventually deleted only because it was thought unnecessary." White & Summers, 1 *Uniform Commercial Code* 185 (3d ed. 1988).

clude resort to an alternative tort remedy with its more relaxed statute of limitations.

■ Under *Hapka,* therefore, the plaintiffs in this case may sue in tort. First of all, the plaintiffs other than Dr. Vukodinovich are not parties to any commercial transaction involving the dental chair. They are complete strangers to the contractual arrangements involving the defective product, and allowing them to sue in tort does not undermine the basic commercial concerns of the U.C.C.

■ Neither is Dr. Vukodinovich precluded from suing in tort for the damage to his "other property." Dr. Vukodinovich could not, of course, sue in tort for damages to his dental chair, but he can sue for his other property damage. Unlike Conrad and Brian Hapka, who dealt in the product sold, Dr. Vukodinovich does not deal in dental chairs. In the language of *Hapka,* there was not, as between the plaintiff and the defendants, a "commercial transaction." Allowing a tort remedy here does not undermine the U.C.C. We reverse the rulings below and reinstate the claims of all plaintiffs sounding in negligence or strict liability. Overruled are the contrary views expressed by the court of appeals in *Nelson v. International Harvester Corp., supra,* and *TCF Banking & Savings v. Marshall Truss Systems, Inc., supra.*

■ To sum up, we hold that the U.C.C. provides the exclusive remedy for other property damages arising out of a sale of goods only when that sale fits *Hapka's* narrow definition of a "commercial transaction," *i.e.,* where the parties to the sale are dealers in the same goods or, to use a more precise term, "merchants in goods of the kind." [7] In actions for damages to other property which arise from a sale of goods between parties who are not "merchants in goods of the kind," such as in the case here, the tort remedies of negligence and strict liability are always available, even if the parties can sue under the U.C.C. as

well. And, of course, an action for damage to the defective product itself is always limited to a U.C.C. based recovery.

Reversed.

---

7. While this case was on appeal before the court of appeals, 1991 Minn.Laws, ch. 352, became effective. Chapter 352 provides that a tort action for damages to other property is permitted except between "merchants in goods of the kind." We need not decide if Chapter 352 applies "retroactively" to allow plaintiffs to sue in tort because, as we have held here, *Hapka* already allows them to sue in tort.