The **BOARD OF REGENTS OF the UNIVERSITY OF MINNESOTA,**
Plaintiff,

v.

**CHIEF INDUSTRIES, INC., a Delaware corporation and Parker–Hannafin Corporation, an Ohio corporation, as successor-in-interest and current owner of Jackes–Evans Controls, a Mississippi corporation, Defendants.**

Civ. No. 4–94–764.

United States District Court,
D. Minnesota,
Fourth Division.

Dec. 28, 1995.

Mark Wayne Lee and Cooper S. Ashley, Maslon, Edelman, Borman & Brand, Minneapolis, MN, plaintiff.

Thomas Bell Caswell, III, Charles J. Rothstein, Zelle & Larson, Minneapolis, MN, and John Arthur Nelson, and Kevin Aloysius Spellacy, Quinlivan, Sherwood, Spellacy & Tarvestad, St. Cloud, MN, for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on the motion of defendant Chief Industries, Inc. ("Chief") for summary judgment. Based on a review of the files, record and proceedings herein and for the reasons stated below, the court grants defendant's motion.

## BACKGROUND

The University of Minnesota ("University") owns and operates an agricultural research facility in Lamberton, Minnesota, formally known as the Southwest Research Station. This facility conducts agricultural research designed to benefit area farmers. As part of its research, the University grows a variety of cash crops in small areas called "plots" on approximately 2,000 acres of land. Many of the various forms of cash crops which the University raises are ultimately sold on the commodities market. In 1985, the University purchased a gas fired blower dryer unit, manufactured by Chief. The dryer unit contained a component part manufactured by the predecessor-in-interest of defendant Parker–Hannafin Corporation. The dryer unit was installed in April 1985, and operated without difficulty for more than seven years. On August 5, 1992, the dryer unit allegedly failed, resulting in a fire that damaged the plot house and its contents. On August 11, 1994, the University filed suit against defendants alleging that the dryer unit, including its component parts, was defective and unreasonably dangerous at the time of its design, manufacture and sale. The University seeks to recover damages for defendant's negligence and under the doctrine of strict products liability. Defendants move for summary judgment on the basis that the University's tort actions are barred by Minn.Stat. § 604.10.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which re-

quires the trial judge to direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53. With this standard at hand, the court considers the defendant's motion for summary judgment.

Defendant moves for summary judgment based on Minn.Stat. § 604.10(a). The statute prohibits recovery in tort for damage to property other than the goods sold when the sale of goods is between "merchants in goods of the kind." *Id.* The University and defendants agree that the University seeks solely to recover in tort for damage to property other than the goods sold. The issue is whether the University is a "merchant in goods of the kind" with respect to the dryer unit.

Minnesota courts have long held that parties seeking damages arising from "commercial transactions" are restricted to Uniform Commercial Code ("UCC") remedies, whereas parties seeking damages arising from "consumer transactions" have available the full panoply of tort remedies. Minnesota courts have labored, however, to find some principled basis for distinguishing consumer transactions from commercial transactions. *See Lloyd F. Smith Co., Inc. v. Den–Tal–Ez, Inc.*, 491 N.W.2d 11, 14 (Minn.1992) (collecting cases). In making this distinction, courts have had particular difficulty where, as here, both parties to the transaction are "merchants," as that term is defined in the UCC. *See* Minn.Stat. § 336.2–104(1); Minn.Stat. § 336.2–104(3).

In *Superwood Corp. v. Siempelkamp Corp.*, 311 N.W.2d 159 (Minn.1981), the Supreme Court of Minnesota held that "economic losses that arise out of commercial transactions, except those involving personal injury or damage to other property, are not recoverable under the tort theories of negligence or strict products liability." *Id.* at 162. The court recognized that the UCC defines the remedies available to parties in commercial transactions and that "to allow tort liability in commercial transactions would totally emasculate these provisions of the UCC." *Id.* Nevertheless, the court carved out an exception to the general rule of UCC exclusivity for personal injury or damage to other property. Notably, the underlying claim in *Superwood* involved neither personal injury nor damage to other property. *Id.* at 160.

The Supreme Court of Minnesota overruled the *Superwood* exception in *Hapka v. Paquin Farms*, 458 N.W.2d 683 (Minn.1990). In *Hapka*, the court recognized that under the facts of *Superwood*, the exception announced in that case was not necessary to the decision. Moreover, the court examined the discussion which preceded the *Superwood* holding and noted that:

> Having set the stage for an exception designed to preserve the availability of tort remedies based on negligence and strict products liability in actions arising out of *consumer* transactions, the [*Superwood*] court instead carved out an exception for cases arising out of *commercial* transactions involving personal injury or damage to other property.

*Hapka,* 458 N.W.2d at 687–88 (emphasis added). Consequently, the *Hapka* court held that the UCC provides exclusive remedies with respect to damages in a commercial transaction which involves property damage only.

The *Hapka* court expressly distinguished commercial transactions from consumer transactions. With respect to commercial transactions, the court recognized that the UCC is a "complete and independent statutory scheme enacted for the governance of all commercial transactions ... [and] is intended to displace tort liability." *Id.* at 688. The court reasoned that whereas UCC remedies are less than adequate in ordinary consumer transactions because "a consumer has neither the skill nor the bargaining power to negotiate either warranties or remedies," the law expects "parties to commercial transactions to be knowledgeable and of relatively equal bargaining power so that warranties can be negotiated to the parties' mutual advantage." *Id.*

The Supreme Court of Minnesota revisited the *Hapka* decision in *Lloyd F. Smith Co. v. Den–Tal–Ez, Inc.,* 491 N.W.2d 11 (Minn. 1992). In *Den–Tal–Ez,* a dentist, a building owner and other tenants brought suit in tort and for breach of warranty arising out of a fire caused by an allegedly defective motorized dental chair. The chair, which had two previous owners, was originally purchased at least thirteen years before it caught fire. The UCC limitations period for breach of warranty is four years. The trial court ruled that plaintiffs' claims were for "other property" damages in a commercial transaction, for which the UCC provided the exclusive remedy under *Hapka,* and granted defendants' motion for summary judgment. *Den–Tal–Ez,* 491 N.W.2d at 13. The Court of Appeals affirmed. *Id.* The Supreme Court of Minnesota reversed and reinstated plaintiffs' tort claims for damage to other property.

The *Den–Tal–Ez* court recognized that the "commercial transaction"/"consumer transaction" dichotomy which guided the *Hapka* decision was not sufficient to resolve the issue under the facts presented, since the purchase of the dentist's chair had both commercial and consumer aspects. Thus the court introduced the "merchant in goods of the kind" analysis to characterize the underlying transaction. The court stated that, under *Hapka,* if the underlying transaction is not a "classic commercial transaction," that is "if the buyer of a defective product is not a merchant dealing with another merchant in goods of the kind," the buyer may recover in tort as well as contract for damage to other property. *Hapka,* 491 N.W.2d at 15. The court concluded that the plaintiff-dentist was not a "merchant in goods of the kind" and that, under *Hapka,* the purchase of the dentist chair was not a "commercial transaction." *Id.* at 17. In sum, the court held that

the UCC provides the exclusive remedy for other property damages arising out of a sale of goods only when that sale fits *Hapka's* narrow definition of a "commercial transaction," i.e., where the parties to the sale are dealers in the same goods or, to use a more precise term, "merchants in goods of the kind."

*Id.*

In 1991, the Minnesota legislature passed Minnesota Statute Section 604.10. The statute provides:

(a) Economic loss that arises from a sale of goods that is due to damage to tangible property other than the goods sold may be recovered in tort as well as in contract, but economic loss that arises from a sale of goods between parties who are each merchants in goods of the kind is not recoverable in tort.

(b) Economic loss that arises from a sale of goods, between merchants, that is not due to damage to tangible property other than the goods sold may not be recovered in tort.

(c) The economic loss recoverable in tort under this section does not include economic loss due to damage to the goods themselves.

Minn.Stat. § 604.10 (1994).

The placement of Minn.Stat. § 604.10 within the landscape of Minnesota "economic loss" doctrine case law is subject to two interpretations. One interpretation, urged by the University, is that the statute revives part of the exception first announced in *Su-*

*perwood*, allowing recovery in tort as well as in contract for economic loss due to damage to other property, although it forecloses this exception where the sale of goods is between merchants in goods of the kind. Under this interpretation, the statute partially overrules the *Hapka* decision and should be applied broadly to permit tort recovery in all but very limited circumstances. Under a second interpretation, the statute simply clarifies the *Hapka* decision and thus parallels the *Den–Tal–Ez* holding, which did not overrule *Hapka*. Under this interpretation, the statute does not drastically alter the interplay between the UCC and tort remedies. The court finds the second interpretation persuasive because it allows the *Den–Tal–Ez* decision and the statute to be read in harmony.

■ To determine whether the sale of the dryer unit was a transaction between "merchants in goods of the kind" the court must examine the underlying transaction to determine whether the parties are "merchants" with respect to the goods sold; whether the transaction was between parties chargeable with knowledge or skill peculiar to the practices or goods involved in the transaction. This is a highly fact-specific inquiry which does not produce bright-line rules.[1] Several features of the underlying transaction are relevant including, *inter alia*, whether the transaction is part of a continuing pattern of buying and selling rather than an isolated transaction, the relative bargaining power of the purchasing party, the sophistication, professionalism, special knowledge of the purchasing party and the purchasing party's knowledge of the risks involved. *See Lloyd F. Smith v. Den–Tal–Ez, Inc.*, 491 N.W.2d 11 (Minn.1992); *Hapka v. Paquin Farms*, 458 N.W.2d 683 (Minn.1990).

■ Defendants argue that "given the University's frequency of purchases of dryer units, its professionalism, its common experience, and its specialized knowledge," the University is a merchant in goods of the kind with respect to the dryer unit. The University, on the other hand, argues that it does not "deal in" dryer units, therefore it cannot be a merchant in goods of the kind. The court concludes that the University was a merchant with respect to the purchase of the dryer unit. The purchase of the dryer unit by the University was not an isolated transaction; the University had purchased six such units over the past thirty years. The University solicited bids for the purchase and thus possessed some bargaining power in the transaction. The University was a sophisticated purchaser and employed an agent who was an acknowledged national expert in dryer units. This knowledge informed the University of the risks posed by the product and the potential damage to both the product and other property that could result from product failure.

## CONCLUSION

Although the question is a close one, the court concludes that the University was a merchant in goods of the kind regarding the dryer units, and applying the court's analysis of Minnesota law, the University's tort claims for damage to other property are barred by Minn.Stat. § 604.10(a).

Accordingly, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

1. Defendant places great reliance on two unpublished decisions of this court which set forth a "tools of the trade" test to determine whether one is a "merchant in goods of the kind." The court is unpersuaded that these opinions accurately reflect Minnesota law and accordingly declines to apply that test.