United States Court of Appeals

FOR THE EIGHTH CIRCUIT

_____

No. 96-1257
_____

Regents of the University          *
of Minnesota,                      *
                                   *
          Appellant,               *
                                   *
     v.                            *    Appeal from the United States
                                   *    District Court for the
Chief Industries, Inc., a          *    District of Minnesota.
Delaware corporation;              *
Parker-Hannafin Corporation,       *
an Ohio corporation, as            *
successor in interest and          *
current owner of Jackes-Evans      *
Controls, a Mississippi            *
corporation,                       *
                                   *
          Appellees.               *

_____

Submitted:  November 20, 1996

Filed:  February 13, 1997
_____

Before BEAM, LAY, and LOKEN, Circuit Judges.
_____

BEAM, Circuit Judge.


     The University of Minnesota appeals the district court's[1]
grant of summary judgment to defendants Chief Industries and
Parker-Hannafin Corporation in this products liability case.  We
affirm.

_____

     The Honorable David S. Doty, United States District Judge for
the District of Minnesota.

## I. BACKGROUND

Since 1959, the University has operated the Southwest Research Station near Lamberton, Minnesota. The Southwest station, one of several agricultural research stations run by the University, consists of 680 acres on which the University grows various crops and conducts research. The University leases an additional 2,000 acres at the Southwest station to tenants who contribute a share of their crops as rent. All of the crops grown at the station are handled at on-site facilities.

In 1985, the University decided to purchase a new grain dryer for the Southwest station. Before the purchase, Dr. Wallace Nelson, the superintendent of the station since it opened in 1959, consulted Dr. Harold Cloud, an agricultural engineer in the University's Department of Agricultural Engineering. Dr. Nelson described Dr. Cloud as a "drying specialist in ag[ricultural] engineering" and as "the expert, probably, in the United States on drying." Appellant's Appendix at 24, 25. Dr. Nelson stated that because of Dr. Cloud's expertise, "he did a great deal of help on specifications, fan sizes, BTUs, all these sort of things." Id. at 24.

After soliciting bids, Nelson purchased a dryer unit manufactured by a subsidiary of Chief Industries from a local distributor. The dryer was essentially a gas-powered heater and fan unit that the University attached to a concrete slab on the exterior of an existing grain drying structure. One component of the unit was an electronic solenoid valve that stops the flow of fuel to the unit when the air in the dryer reached a certain temperature. The solenoid was manufactured by a predecessor of Parker-Hannafin.

On August 5, 1992, seven years after the University bought the Chief grain dryer, a fire damaged the structure to which the unit

was attached. The University alleges that the Parker-Hannafin solenoid failed, causing the dryer to overheat and start the fire. The University brought suit against Chief and Parker-Hannafin, asserting theories of strict liability, failure to warn, and negligent design and manufacture. The district court concluded that the University was a "merchant in goods of the kind" and was thus barred from bringing tort claims under Minnesota Statutes § 604.10. Board of Regents of the Univ. of Minnesota v. Chief Indus., Inc., 907 F. Supp. 1298, 1302 (D. Minn. 1995). On this basis, the district court granted summary judgment to the defendants. The University appeals.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo. Thorn v. International Business Machines, Inc., 101 F.3d 70, 72 (8th Cir. 1996). Summary judgment is proper only if the evidence taken in the light most favorable to the nonmoving party fails to create a genuine issue of material fact and one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Section 604.10(a) of the Minnesota Statutes provides that "economic loss that arises from a sale of goods between parties who are each merchants in goods of the kind is not recoverable in tort." Enacted in 1991, section 604.10 codified Minnesota's preexisting rule that in commercial transactions the Uniform Commercial Code provides the sole remedy for economic loss arising out of the sale of goods, except for personal injury or damage to the product itself. Under this "economic loss" doctrine, a plaintiff may not recover in tort for damages to other property caused by a defective product, but is limited to contract actions such as breach of warranty. See Lloyd F. Smith Co. v. Den-Tal-Ez, Inc., 491 N.W.2d 11, 14 (Minn. 1992).

The Minnesota Supreme Court has considered no economic loss cases since section 604.10 was enacted. In applying the doctrine in Den-Tal-Ez, however, the court explicitly referred to the statute (which was then pending in the state legislature) and adopted the statute's language limiting tort recovery for "merchants in goods of the kind." Id. at 17 & n.7. We therefore agree with the district court that it is proper to construe section 604.10 in harmony with the principles set forth in Den-Tal-Ez and Hapka v. Paquin Farms, 458 N.W.2d 683 (Minn. 1990).

In Hapka, the Minnesota Supreme Court held that "the Uniform Commercial Code must control exclusively with respect to damages in a commercial transaction which involves property damage only." 458 N.W.2d at 688. Under Hapka, the inquiry focused on whether the sale of the defective product was a "commercial transaction" or a "consumer transaction." See id. at 687. As the court explained, the U.C.C. barred tort claims for damage to other property in commercial transactions, but did not so limit actions that arose from consumer transactions. Id.

In 1992, the court revisited the economic loss doctrine in Den-Tal-Ez. In Den-Tal-Ez, a dentist purchased second-hand a motorized dental chair. 491 N.W.2d at 13. The dentist brought a product liability suit against the manufacturer after the chair allegedly caused a fire that damaged the dental office and the building where it was located. Id. The district court ruled that Hapka barred the plaintiffs' tort claims, and the Minnesota Court of Appeals affirmed. Id. The state supreme court reversed. Leaving intact Hapka's basic distinction between commercial and consumer transactions, id. at 17, the court explained that the economic loss doctrine applied to losses caused by a product sold by "a merchant dealing with another merchant in goods of the kind." Id. at 15.

This brings us to this appeal's sole question:  is the University a "merchant in goods of the kind"?  That is, is the University a merchant with respect to grain drying heaters such as the one that allegedly caused the fire at the Southwest station?  If, as the district court concluded, the University is a merchant with respect to grain dryers, then it may not recover in tort under either the statute or the Hapka/Den-Tal-Ez rule.

Under the U.C.C. a "merchant" is:

> a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

Minn. Stat. § 336.2-104(1).  A party is thus a "merchant" of goods for purposes of the U.C.C. either: (1) by dealing in those goods; or (2) by way of specialized knowledge of the goods.  There is no dispute that the University is not a dealer in grain drying units, so if section 604.10 applies, it is only because the University has specialized knowledge of such products.  Notwithstanding section 336.2-104(1)'s dual definition of "merchant," the University argues that a party must be a dealer to be a "merchant of goods of the kind" for purposes of section 604.10.

Den-Tal-Ez provides some support for the University's position.  The court in that case noted that "in a classic commercial transaction involving experienced merchants engaged in the buying and selling of their stock in trade" the recovery of loss is appropriately restricted to contractual remedies.  491 N.W.2d at 16.  The University also points to Dietz Brothers, Inc. v. Klein Tools, Inc., No. C9-92-1136, 1993 WL 19709 (Minn. Ct. App. Jan. 26, 1993).  As part of a brief discussion, the court quoted the definition of "merchant" in section 336.2-104(1) and noted that "[a] `merchant' also is defined as `[o]ne who is engaged in the

-5-

purchase and sale of goods; a trafficker; a retailer; a trader.'" Id. at *2 (quoting Black's Law Dictionary 890 (5th ed. 1979)).

We are not persuaded, however, that either of these cases requires that a "merchant in goods of the kind," for purposes of section 604.10, be an actual dealer of the product. We note first that as an unpublished opinion, Dietz has no precedential value. Minn. Stat. § 480A.08, Subd. 3. Even as persuasive authority, however, Dietz does not greatly aid the University, as the court in that case explicitly cited section 336.2-104(1) in discussing whether the plaintiff was a merchant in goods of the kind. The Dietz court did not indicate that the "specialized knowledge" category of the statute's definition of "merchant" did not apply in the context of the economic loss doctrine.

Similarly, while the court in Den-Tal-Ez indicated that a dealer in a commercial transaction involving its normal stock-in-trade was a merchant for purposes of the economic loss doctrine, it did not indicate that the rule applies only to dealers. Rather, the court was more concerned with whether the plaintiff's sophistication, knowledge, and bargaining power with respect to a particular product indicates the wisdom of providing for "reasonable containment of the risk of a defective product . . . by providing an exclusive warranty remedy." Den-Tal-Ez, 491 N.W.2d at 16. A plaintiff who regularly buys and sells goods of the kind will in all likelihood have such knowledge and sophistication, but so may a similarly knowledgeable party who is not a dealer. Neither the statute nor the case law indicates that section 604.10 should be limited to dealers. Indeed, to so narrow section 604.10 would create an unwarranted inconsistency with section 336.2-104(1)'s dual definition of "merchant."

In the present case, the University's knowledge and experience with respect to grain dryers constituted "knowledge or skill peculiar to the practices or goods involved in the transaction." Minn. Stat. § 336.2-104(1). The University had purchased a number

of such units over the prior thirty years, and had the advantage of a centralized purchasing department that solicited bids for the purchase. Before purchasing the unit, the Southwest station's superintendent (who had been responsible for other such purchases) consulted a prominent expert in grain drying, who provided advice on such specifications for the unit as fan size and BTU requirements.

To be sure, not all large, sophisticated purchasers are necessarily merchants in goods of the kind they buy, just as an informed and careful individual consumer does not become a "merchant." But based on the particular and undisputed facts of this case, we agree with the district court that the University possessed specialized knowledge with respect to the grain drying unit, and that "[t]his knowledge informed the University of the risks posed by the product and the potential damage to both the product and other property that could result from product failure." Board of Regents, 907 F. Supp. at 1302. The district court properly concluded that, as a matter of law, the University was a merchant of goods of the kind and that section 604.10 bars any action in tort.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.


LAY, Circuit Judge, dissenting.

I respectfully dissent.

The only good in today's decision is that its jurisdictional roots are in diversity of citizenship, 28 U.S.C. § 1332. Thus, this case should have little precedential value but may confuse the issue until the Supreme Court of Minnesota can further clarify the

-7-

state's law concerning the difference between commercial and consumer transactions. I had assumed the Supreme Court had done this in Justice Simonett's lucid opinion in Lloyd F. Smith Co. v. Den-Tal-Ez, Inc., 491 N.W.2d 11 (Minn. 1992). In that case, the court points out the limiting value of Hapka v. Paquin Farms, 458 N.W.2d 683 (Minn. 1990), distinguishing commercial and consumer transactions. In Hapka the buyer was limited to his U.C.C. remedy, and the seller and buyer were both knowledgeable dealers in seed potatoes and were of relatively equal bargaining power.

Unlike the court today, the Den-Tal-Ez court interpreted Hapka as providing a "narrow definition" of "commercial transaction." Den-Tal-Ez, 491 N.W.2d at 17. More to the point, Den-Tal-Ez defined the only phrase necessary to the resolution of this case, holding that the U.C.C. provides the exclusive remedy only "where the parties to the sale are dealers in the same goods or, to use a more precise term, 'merchants in goods of the kind.'" Id. (quoting Minn. Stat. § 604.10) (emphasis mine). By so defining "merchants in goods of the kind," the only question remaining for us is whether the University and Parker-Hannafin are both "dealers in the same goods." The answer is clearly no.

But the majority insists that the Den-Tal-Ez court "was more concerned with whether the plaintiff's sophistication, knowledge, and bargaining power" sufficiently countered any risk of purchasing a defective product than whether both parties to the transaction were dealers in the same goods. Ante at 6. I find no such discussion in Den-Tal-Ez. In fact, Justice Simonett expressly states, "[I]f the buyer of a defective product is not a merchant dealing with another merchant in goods of the kind, the buyer is not precluded from suing in tort as well as contract for damage to his other property." 491 N.W.2d at 15. The court thereafter emphasized that in consumer transactions,

> "[t]he destruction of a home and physical damage to personal property is no less an injury to one who sustains them than a bodily injury." Milbank Mut. Ins.

-8-

Co. v. Proksch, 309 Minn. 106, 115, 244 N.W.2d 105, 110 (Minn. 1976) (defective Christmas tree caused fire damage to house).  Consequently, when the defective product causes damage to other property outside the classic mercantile transaction, our sense of justice dictates that here, too, the more restrictive warranty remedy should not preclude resort to an alternative tort remedy with its more relaxed statute of limitations.

Id. at 16-17.[2]


Section 604.10(a) governs this claim.  When it enacted § 604.10(a) in 1991, had it so desired, the Minnesota legislature could have chosen the broad term "merchant" as generally defined by § 336.2-104(1) instead of "merchants in goods of the kind."  The legislature's choice instead to incorporate the limiting language manifests its intent to narrow application of the economic loss doctrine.[3]  There is no inconsistency in this obvious, clarifying provision, with § 336.2-104(1).  The intended purpose of § 604.10 was to overcome Hapka's broad language, based on § 336.2-104(1), so that ordinary consumers will not be denied their "economic loss arising from the sale of goods."[4]

---

[2]The majority faults the University in citing an unpublished opinion with no precedential value.  Dietz Bros., Inc. v. Klein Tools, Inc., No. C9-92-1136, 1993 WL 19709 (Minn. Ct. App. Jan. 26, 1993).  Yet the majority itself finds support in Dietz's definition of merchant under § 336.2-104(1).  The majority fails to recognize that Dietz did not rely on § 604.10 and its clarifying language because § 604.10 was found not to be retroactive.  Id. at *1.

[3]The Comment to § 336.2-104 amply discusses how various operative specific provisions of the U.C.C., which borrow from the § 336.2-104 definition of "merchant," have limited or expanded the definition to meet the particular purposes of those provisions.  See Minn. Stat. § 336.2-104 cmt. 2.

[4]As the Board of Regents notes, Senator Stumpf presented the bill, which later passed and was codified as § 604.10, as "the possible way of correcting [the Hapka decision]."  Hearings on S.F. No. 565 Before Subcomm. on Civil Law of Senate Judiciary Comm., (March 22, 1991) [hereinafter Hearings] (introduction of Sen. Stumpf); Appellant's App. at 59.  Senator Stumpf then introduced Mark McKeon, who apparently authored the bill and who represented insurance companies that insured farmers.  After a lengthy discussion regarding farmers who purchase implements that much

In contrast, the majority opinion today declares that limiting § 604.10 to dealers "would create an unwarranted inconsistency" with § 336.2-104.  Ante at 6.  But by incorporating § 336.2-104's broad definition of "merchant" as it regards goods of the kind (i.e., by including not just dealers but also others whose occupation or employment of another gains them some specialized knowledge in the goods) the majority contradicts the very intent of § 604.10.  Evident from the legislative history and consistent with Justice Simonett's interpretation, § 604.10(a) was intended to protect individuals, such as farmers, whose farm implements damage other property.  We have essentially just such a case before us.

Indeed, we should be wary of suggesting § 604.10(a) adds nothing to Minnesota law, or that it is a mere redundancy to § 336.2-104(1).  Fundamental to statutory construction is the well-settled principle that every statute shall be construed to have meaning.  Gale v. Comm'r of Taxation, 228 Minn. 345, 349, 37 N.W.2d 711, 715 (1949) ("A statute should be so construed that, if it can be prevented, no clause, word, or sentence will be superfluous, void, or insignificant."); see also Minn. Stat. § 645.16 ("Every law shall be construed, if possible, to give effect to all its provisions.  When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.").

The present case is clearly one that involves a consumer transaction.  A solenoid valve failed in a heater in a University agricultural research facility some seven years after purchase.

---

later caused fire damage to other property, McKeon complained that "when a farmer buys a widget, it's a commercial transaction and the farmer and his insurer are subject to the holding in Hapka at this point."  Hearings (statement of Mark McKeon, representing Minn. Ass'n of Farm Mut. Ins. Cos.); Appellant's App. at 65.  McKeon regarded the loss of hogs due to a fire caused by an electric pump to be "a perfectly typical example" of a situation the bill would address.  Id. at 67.

This defective valve allegedly interrupted the flow of fuel to the burner unit, resulting in an extensive fire and loss to the University. Under the majority's interpretation, the University is limited to its remedy under the U.C.C. This is an artificial token of relief since the statute of limitations has already run on any breach of warranty claim.

Even assuming, as does the majority, that the Minnesota Supreme Court did not intend to interpret "merchants in goods of the kind" under § 604.10(a) when it referred to that section and stated "dealers in the same goods" is synonymous with "merchants in goods of the kind," the court's decision today remains in error. Without the Den-Tal-Ez interpretation of § 604.10(a), one would begin and end with the definition of "merchant" as defined by § 336.2-104(1).

Section 336.2-104(1) defines "merchants" as comprising two classes: those possessing specialized knowledge as to the particular goods involved in the transaction, and those possessing specialized knowledge as to the particular business practice involved in the transaction. Minn. Stat. § 336.2-104 cmt. 2, ¶1. Regarding those with specialized knowledge as to goods, the statute designates only three particular methods of acquiring such knowledge to attain "merchant" status: (1) by being a dealer in the goods; (2) by maintaining an occupation by which one holds himself out as having specialized knowledge in the particular goods involved; or (3) by employing an agent, broker or other intermediary who, by his occupation, holds himself out as having specialized knowledge in the goods involved. Minn. Stat. § 336.2-104(1).

The majority of the court conflates the last two methods, suggesting a person becomes a merchant simply "by way of specialized knowledge of the goods." Ante at 5. Yet this is far too sweeping a generality to reflect accurately the code's express reliance on the occupation of the purported merchant or the

occupation of the purported merchant's hired agent, broker or other intermediary. In this case, of course the University by its occupation does not hold itself out as having specialized knowledge in grain drying units, and the record does not support the notion that the University hired Dr. Cloud as an intermediary who, by his occupation, held himself out as having specialized knowledge in grain drying units.

Additionally, I do not believe that by consulting with an agricultural engineer the University achieves merchant status as to the grain drying unit. The Minnesota Supreme Court resolved a similar issue in Church of the Nativity of Our Lord v. Watro, Inc., 491 N.W.2d 1 (Minn. 1992), the same day it decided Den-Tal-Ez. There, a church had employed an architectural firm to inspect church buildings and to identify repair and maintenance needs. The firm recommended re-roofing and participated with the church in selecting materials and contractors for the job. After consequent repairs, a leaky roof eventually caused substantial interior damage to the walls and ceilings of church buildings. Interpreting "merchant" under § 336.2-104(1) for the purposes of application of the Minnesota Consumer Fraud Act, the court held the church was not a "merchant" in the transaction. It declared, "[S]omething more than hiring a consultant is required to move a noncommercial entity within the scope of the definition of 'merchant.'" Id. at 7. By comparison, something more than engaging an agricultural specialist is necessary to move the University within the scope of "merchant in goods of the kind."

Contrary to Minnesota application of the U.C.C., the court today penalizes a purchaser for employing expert assistance. Worse still, as in this case, by seeking general expert assistance concerning the particular function a device should serve--as opposed to gaining expert assistance concerning the particular hazards the given device might pose--a purchaser simply barters away the right to protect itself from potential tremendous

-12-

consequential losses in exchange for information that the purchased device will fit specified operative needs.

The majority recognizes that Dr. Cloud was a prominent expert in grain "drying" and that Dr. Cloud's expertise assisted to determine the specific "fan size and BTU requirements." Ante at 7. But as the University argues, this general functional expertise does not equate to expertise in the dryer units themselves, in fuel valves, or in the fire hazard the dryer unit might pose the University's property. Thus, even assuming today's decision otherwise correctly promotes a mere purchaser to a "merchant in goods of the kind" by the purchaser's employment of a risk-calculation expert, the decision is yet in error since Dr. Cloud's expertise concerns only function, not safety. The majority fails to discuss whether the factual record supports the conclusion that Dr. Cloud was an expert in grain dryers, as opposed to having expertise merely in grain drying. In many cases this type of distinction may be nominal, but not here.

In sum, that the University is large and has purchased several of these heaters in the past and has retained an engineer knowledgeable in the specifications and use of the heaters does not transform the University from an ordinary consumer to a merchant similar to a "trafficker, retailer, trader." Ante at 6. In all due respect, the result reached here is absurd. I think both the legislature of the state of Minnesota and the lawyers of this state should be concerned with this esoteric approach to the law. Any purchaser of goods who now makes a specialized study of consumer products in order to buy a car, a computer, a tractor or any other type of consumer goods for use will now find that its specialized buying knowledge will preclude it from recovering for a defective product that caused consequential damages.[5]

---

[5]By analogy consider a businessman who has purchased three computer systems over the past decade, upgrading periodically after conferring with a computer consultant. The consultant considers the particular needs of the business and she assists in purchasing the computer that she recommends. Thus, the new system contains a

I would reverse.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

specific memory capacity and processing speed and includes a certain printer and monitor. A year after the statutory period expires for bringing a breach of warranty or contract claim, a faulty computer component causes a fire, destroying the office. Under the reasoning of the court today, the businessman's specialized knowledge--as imputed through his consultant--would leave him a "merchant in goods of the kind," notwithstanding that his consultant's functional expertise did not concern the electrical hazards that ultimately caused the loss. This result is simply inconsistent with Minnesota law.