LAY, Circuit Judge,
dissenting.
I respectfully dissent.
The only good in today’s decision is that its jurisdictional roots are in diversity of citizenship, 28 U.S.C. § 1332. Thus, this case should have little precedential valué but may confuse the issue until the Supreme Court of Minnesota can further clarify the state’s law concerning the difference between commercial and consumer transactions. I had assumed the supreme court had done this in Justice Simonett’s lucid opinion in Lloyd F. Smith Co. v. Den-Tal-Ez, Inc., 491 N.W.2d 11 (Minn.1992). In that case, the court points out the limiting value of Hapka v. Paquin Farms, 458 N.W.2d 683 (Minn.1990), distinguishing commercial and consumer transactions. In Hapka the buyer was limited to his U.C.C. remedy, and the seller and *1413 buyer were both knowledgeable dealers in seed potatoes and were of relatively equal bargaining power.
Unlike the court today, the Den-Tal-Ez court interpreted Hapka as providing a “narrow definition” of “commercial transaction.” Den-Tal-Ez, 491 N.W.2d at 17. More to the point, Den-Tal-Ez defined the only phrase necessary to the resolution of this ease, holding that the U.C.C. provides the exclusive remedy only “where the parties to the sale are dealers in the same goods or, to use a more precise term, ‘merchants in goods of the kind.’ ” Id. (quoting Minn.Stat. § 604.10) (emphasis mine). By so defining “merchants in goods of the kind,” the only question remaining for us is whether the University and Parker-Hannafin are both “dealers in the same goods.” The answer is clearly no.
But the majority insists that the Den-Tal-Ez court “was more concerned with whether the plaintiffs sophistication, knowledge, and bargaining power” sufficiently countered any risk of purchasing a defective product than whether both parties to the transaction were dealers in the same goods. Ante at 1412. I find no such discussion in Den-Tal-Ez. In fact, Justice Simonett expressly states, “[I]f the buyer of a defective product is not a merchant dealing with another merchant in goods of the kind, the buyer is not precluded from suing in tort as well as contract for damage to his other property.” 491 N.W.2d at 15. The court thereafter emphasized that in consumer transactions,
“[t]he destruction of a home and physical damage to personal property is no less an injury to one who sustains them than a bodily injury.” Milbank Mut. Ins. Co. v. Proksch, 309 Minn. 106, 115, 244 N.W.2d 105, 110 (Minn.1976) (defective Christmas tree caused fire damage to house). Consequently, when the defective product causes damage to other property outside the classic mercantile transaction, our sense of justice dictates that here, too, the more restrictive warranty remedy should not preclude resort to an alternative tort remedy with its more relaxed statute of limitations.
Id. at 16-17.[2]
Section 604.10(a) governs this claim. When it enacted § 604.10(a) in 1991, had it so desired, the Minnesota legislature could have chosen the broad term “merchant” as generally defined by § 336.2-104(1) instead of “merchants in goods of the kind.” The legislature’s choice instead to incorporate the limiting language manifests its intent to narrow application of the economic loss, doctrine.[3] There is no inconsistency in this obvious, clarifying provision, with § 336.2-104(1). The intended purpose of § 604.10 was to overcome Hapka’s broad language, based on § 336.2-104(1), so that ordinary consumers will not be denied their “economic loss arising from the sale of goods.” [4]
In contrast, the majority opinion today declares that limiting § 604.10 to dealers *1414 “would create an unwarranted inconsistency"’ with § 336.2-104. Ante at 1412. But by incorporating § 336.2-104’s broad definition of “merchant” as it regards goods of the kind (ie., by including not just dealers but also others whose occupation or employment of another gains them some specialized knowledge in the goods) the majority contradicts the very intent of § 604.10. Evident from the legislative history and consistent with Justice Simonett’s interpretation, § 604.10(a) was intended to protect individuals, such as farmers, whose farm implements damage other property. We have essentially just such a case before us.
Indeed, we should be wary of suggesting § 604.10(a) adds nothing to Minnesota law, or that it is a mere redundancy to § 336.2-104(1). Fundamental to statutory construction is the well-settled principle that every statute shall be construed to have meaning. Gale v. Comm’r of Taxation, 228 Minn. 345, 349, 37 N.W.2d 711, 715 (1949) (“A statute should be so construed that, if it can be prevented, no clause, word, or sentence will be superfluous, void, or insignificant.”); see also Minn.Stat. § 645.16 (“Every law shall be construed, if possible, to give effect to all its provisions. When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.”).
The present case is clearly one that involves a consumer transaction. A solenoid valve failed in a heater in a University agricultural research facility some seven years after purchase. This defective valve allegedly interrupted the flow of fuel to the burner unit, resulting in an extensive fire and loss to the University. Under the majority’s interpretation, the University is limited to its remedy under the U.C.C. This is an artificial token of relief since the statute of limitations has already run on any breach of warranty claim.
Even assuming, as does the majority, that the Minnesota Supreme Court did not intend to interpret “merchants in goods of the kind” under § 604.10(a) when it referred to that section and stated “dealers in the same goods” is synonymous with “merchants in goods of the kind,” the court’s decision today remains in error. Without the Den-Tal-Ez interpretation of § 604.10(a), one would begin and end with the definition of “merchant” as defined by § 336.2-104(1).
Section 336.2-104(1) defines “merchants” as comprising two classes: those possessing specialized knowledge as to the particular goods involved in the transaction, and those possessing specialized knowledge as to the particular business practice involved in the transaction. Minn.Stat. § 336.2-104 cmt. 2, ¶ 1. Regarding those with specialized knowledge as to goods, the statute designates only three particular methods of acquiring such knowledge to attain “merchant” status: (1) by being a dealer in the goods; (2) by maintaining an occupation by which one holds himself out as having specialized knowledge in the particular goods involved; or (3) by employing an agent, broker or other intermediary who, by his occupation, holds himself out as having specialized knowledge in the goods involved. MinmStat. § 336.2-104(1).
The majority of the court conflates the last two methods, suggesting a person becomes a merchant simply “by way of specialized knowledge of the goods.” Ante at 1411. Yet this is far too sweeping a generality to reflect accurately the code’s express reliance on the occupation of the purported merchant or the occupation of the purported merchant’s hired agent, broker or other intermediary. In this case, of course the University by its occupation does not hold itself out as having specialized knowledge in grain drying units, and the record does not support the notion that the University hired Dr. Cloud as an intermediary who, by his occupation, held himself out as having specialized knowledge in grain drying units.
Additionally, I do not believe that by consulting with an agricultural engineer the University achieves merchant status as to the grain drying unit. The Minnesota Supreme Court resolved a similar issue in Church of Nativity of Our Lord v. WatPro, Inc., 491 N.W.2d 1 (Minn.1992), the same day it decided Den-Tal-Ez. There, a church had employed an architectural firm to inspect church buildings and to identify repair and maintenance needs. The firm recommended re-roofing and participated with the church *1415 in selecting materials and contractors for the job. After consequent repairs, a leaky roof eventually caused substantial interior damage to the walls and ceilings of church buildings. Interpreting “merchant” under § 336.2-104(1) for the purposes of application of the Minnesota Consumer Fraud Act, the court held the church was not a “merchant” in the transaction. It declared, “[Sjomething more than hiring a consultant is required to move a noncommercial entity within the scope of the definition of ‘merchant.’ ” Id. at 7. By comparison, something more than engaging an agricultural specialist is necessary to move the University within the scope of “merchant in goods of the kind.”
Contrary to Minnesota application of the U.C.C., the court today penalizes a purchaser for employing expert assistance. Worse still, as in this case, by seeking general expert assistance concerning the particular function a device should serve—as opposed to gaining expert assistance concerning the particular hazards the given device might pose—a purchaser simply barters away the right to protect itself from potential tremendous consequential losses in exchange for information that the purchased device will fit specified operative needs.
The majority recognizes that Dr. Cloud was a prominent expert in grain “drying” and that Dr. Cloud’s expertise assisted to determine the specific “fan size and BTU requirements.” Ante at 1412. But as the University argues, this general functional expertise does not equate to expertise in the dryer units themselves, in fuel valves, or in the fire hazard the dryer unit might pose the University’s property. Thus, even assuming today’s decision otherwise correctly promotes a mere purchaser to a “merchant in goods of the kind” by the purchaser’s employment of a risk-calculation expert, the decision is yet in error since Dr. Cloud’s expertise concerns only function, not safety. The majority fails to discuss whether the factual record supports the conclusion that Dr. Cloud was an expert in grain dryers, as opposed to having expertise merely in grain drying. In many cases this type of distinction may be nominal,. but not here.
In sum, that the University is large and has purchased several of these heaters in the past and has retained an engineer knowledgeable in the specifications and use of the heaters does not transform the University from an ordinary consumer to a merchant similar to a “trafficker, retailer, trader.” Ante at 1412. In all due respect, the result reached here is absurd. I think both the legislature of the state of Minnesota and the lawyers of this state should be concerned with this esoteric approach to the law. Any purchaser of goods who now makes a specialized study of consumer products in order to buy a car, a computer, a tractor or any other type of consumer goods for use will now find that its specialized buying knowledge will preclude it from recovering for a defective product that caused consequential damages.[5]
I would reverse.

. The majority faults the University in citing an unpublished opinion with no precedential value. Dietz Bros., Inc. v. Klein Tools, Inc., No. C9-92-1136, 1993 WL 19709 (Minn.Ct.App. Jan.26, 1993). Yet the majority itself finds support in Dietz’s definition of merchant under § 336.2-104(1). The majority fails to recognize that Dietz did not rely on § 604.10 and its clarifying language because § 604.10 was found not to be retroactive. Id. at *1.

. The Comment to § 336.2-104 amply discusses how various specific operative provisions of the U.C.C., which borrow from the § 336.2-104 definition of “merchant," have limited or expanded the definition to meet the particular purposes of those provisions. See Minn.Stat. § 336.2-104 cmt. 2.

. As the Board of Regents notes, Senator Stumpf presented the bill, which later passed and was codified as § 604.10, as “the possible way of correcting [the Hapka. decision].” Hearings on S.F. No. 565 Before Subcomm. on Civil Law of Senate Judiciary Comm., (March 22, 1991) [hereinafter Hearings ] (introduction of Sen. Stumpf); Appellant’s App. at 59. Senator Stumpf then introduced Mark McKeon, who apparently authored the bill and who represented insurance companies that insured farmers. After a lengthy discussion regarding farmers who purchase implements that much later caused fire damage to other property, McKeon complained that “when a farmer buys a widget, it’s a commercial transaction and the fanner and his insurer are subject to the holding in Hapka at this point.” Hearings (statement of Mark McKeon, representing Minn. Ass’n of Farm Mut. Ins. Cos.); Appellant's App. at 65. McKeon regarded the loss of hogs due to a fire caused by an electric pump to be "a perfectly typical example” of a situation the bill would address. Id. at 67.

. By analogy, consider a businessman who has purchased three computer systems over the past decade, upgrading periodically after conferring with a computer consultant. The consultant considers the particular needs of the business and she assists in purchasing the computer that she recommends. Thus, the new system contains a specific memory capacity and processing speed and includes a certain printer and monitor. A year after the statutoiy period expires for bringing a breach of warranty or contract claim, a faulty computer component causes a fire, destroying the office.. Under the reasoning of the court today, the businessman’s specialized knowledge—as imputed through his consultant— would leave him a “merchant in goods of the kind,” notwithstanding that his consultant's functional expertise did not concern the electrical hazards that ultimately caused the loss. This result is simply inconsistent with Minnesota law.